**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Chester ZUKOWSKI, Jr., Defendant–Appellant.**

No. 87–2233.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 21, 1988.

Decided June 28, 1988.

Lee T. Lawless, Federal Public Defender's Office, St. Louis, Mo., for defendant-appellant.

Laura J. Jones, Asst. U.S. Atty., Frederick J. Hess, U.S. Atty., Benton, Ill., for plaintiff-appellee.

Before CUMMINGS and WOOD, Jr., Circuit Judges, and WILL, Senior District Judge.*

HARLINGTON WOOD, Jr., Circuit Judge.

Defendant-appellant Chester Zukowski, Jr., was charged in a one-count indictment with escape from the Federal Prison Camp in Marion, Illinois, in violation of 18 U.S.C. § 751(a). On July 21, 1987, pursuant to a written plea agreement, he entered a conditional plea of guilty pursuant to Federal Rule of Criminal Procedure 11(a)(2), which allows for appellate review of the district court's adverse determination of specified pretrial motions. The court sentenced the defendant to a two-year term of imprisonment. The defendant has appealed, arguing that the district court erred in failing to dismiss the case because the delay between arrest and prosecution violated defendant's statutory and constitutional rights to a speedy trial. The defendant also argues that the government is collaterally estopped from contesting that the defend-

---

* The Honorable Hubert L. Will, Senior District Judge for the Northern District of Illinois, is sitting by designation.

ant's arrest was pursuant to a warrant. We affirm.

## I. FACTUAL BACKGROUND

On August 1, 1983, the defendant was sentenced in the Southern District of Florida to a term of six years' imprisonment for filing false and fraudulent income tax returns. On November 20, 1984, he surrendered to the custody of the Attorney General at the Federal Prison Camp in Marion, Illinois.

On May 19, 1985, the defendant escaped from the Federal Prison Camp. The Bureau of Prisons issued copies of a document entitled "Notice of Escaped Federal Prisoner." No complaint was prepared, and no warrant was issued for his arrest at that time. The defendant was apprehended on June 5, 1985, in Davie, Florida.

Upon apprehension, the defendant was advised of his rights. He told law enforcement officers that he had two firearms in the apartment he had been renting. He consented to a search of the apartment, and the officers recovered the two firearms.

The defendant was initially taken to the Fort Lauderdale city jail, and later transferred to the Federal Correctional Institution in Ashland, Kentucky, where he was to serve the remainder of his sentence on the tax conviction. He began receiving credit toward his sentence when he was apprehended June 5, 1985.

On April 15, 1986, the defendant was indicted in the Southern District of Florida on two counts for possession of firearms by a convicted felon, 18 U.S.C. §§ 922(h)(1), 924(a), arising from the search of his apartment. An arrest warrant was issued April 18, 1986, and a detainer filed at Ashland on April 28, 1986. See 18 U.S.C. § 3161(j)(1)(B). The defendant's initial appearance and arraignment were on May 28, 1986, at which time counsel was appointed. A status conference was held June 3, 1986.

At the status conference, Chief District Judge James Lawrence King raised the issue of a possible violation of the Speedy Trial Act. During discussion among the judge and the attorneys, the defendant's attorney made an oral motion to dismiss the indictment pursuant to 18 U.S.C. § 3161(b) for failure to indict the defendant within thirty days of his arrest.

The government took the position that defendant had been arrested for escape, and that, therefore, section 3161(b) was not violated when the government failed to indict him for the firearms charge within thirty days of the arrest. The assistant United States attorney stated incorrectly that a warrant had been issued for the escape.

In ruling on the timeliness issues in the firearms case, Judge King mentioned that "the prisoner/defendant was arrested in the Southern District of Florida on a warrant of arrest on escape from a federal institution." United States v. Zukowski, No. 86–355 (S.D.Fla. June 20, 1986) (order denying defendant's motion to dismiss). The court went on to find, however, that because the "defendant had not been charged until the indictment was returned, the period between his arrest and the return of the indictment did not violate the provisions of the Speedy Trial Act." Id. The motion to dismiss was therefore denied.

The defendant pled guilty to one count of the indictment on the firearms charge on August 18, 1986, and was sentenced April 27, 1987, to a three-month term to run concurrently with his 1983 tax sentence.

On January 23, 1987, the defendant was indicted in the Southern District of Illinois for the May 19, 1985, escape, from custody.

On June 11, 1987, defendant filed by mail a motion to likewise dismiss the escape charges based on violations of the Speedy Trial Act, 18 U.S.C. §§ 3161(b), 3162(a)(1), and the sixth amendment. Chief Judge Foreman denied the motion on June 29, 1987, and denied defendant's subsequent motion to reconsider on July 21, 1987.[1]

1. The court ordered the affidavit of Robert H. Winklemann, a deputy United States marshal, to be filed. This affidavit confirms that no warrant was issued for the defendant's arrest on the

The defendant entered his conditional plea of guilty on the same day, and this appeal followed.

## II.  DISCUSSION

### A.  Speedy Trial Issues

The defendant argues that he was not properly indicted for the escape within thirty days of his arrest on June 5, 1985. The government argues, and the district court found, that the apprehension of an escaped prisoner is not an arrest that triggers section 3161(b) because the restraints imposed on the prisoner are not new but are based on his original conviction.

The Fourth Circuit considered this issue in *United States v. Sairafi*, 801 F.2d 691 (4th Cir.1986). Sairafi escaped from a federal correctional institution on May 22, 1985, and boarded a plane. When the plane landed, a law enforcement officer seized the defendant and returned him to custody. The court found that "[t]here was no arrest warrant or other document ordering or authorizing defendant's arrest on a charge of escape." *Id.* at 692. The defendant was not indicted for the escape until December 16, 1985.

The Fourth Circuit found that the principle behind the Speedy Trial Act did not support its application to the recapture of an escaped prisoner. The court agreed with the Eighth Circuit that " '[t]he right to a speedy trial on a charge is triggered by arrest only where the arrest is the beginning of continuing restraints on defendant's liberty imposed in connection with the formal charge on which the defendant is eventually tried.' " *Id.* (quoting *United States v. Stead*, 745 F.2d 1170, 1172 (8th Cir.1984)). An arrest of an escaped prisoner, however, does not initiate new restraints; the defendant is subject to apprehension and confinement as a result of his original conviction. *Id.* The Fourth Circuit therefore found no violation of the Speedy Trial Act.

We find the district court's decision that the Speedy Trial Act does not apply to the recapture of an escaped prisoner to be well-supported by the law of the other circuits that have considered the issue. *Sairafi*, 801 F.2d at 692 (Fourth Circuit); *United States v. Ray*, 768 F.2d 991, 995–97 (8th Cir.1985); *Stead*, 745 F.2d at 1172–73 (Eighth Circuit); *United States v. Wilson*, 690 F.2d 1267, 1276 (9th Cir.1982), *cert. denied*, 464 U.S. 867, 104 S.Ct. 205, 78 L.Ed.2d 178 (1983). The defendant, however, seeks to distinguish this case by pointing out that here, unlike *Sairafi*, there was a document authorizing his arrest: the Notice of Escaped Federal Prisoner.

We disagree with the defendant as to the effect of the Notice of Escaped Federal Prisoner. Nowhere on its face does the notice purport to order or authorize an arrest of the subject. The notice is informational only. It provides a photograph of the prisoner; his physical description; his prison, FBI, and social security numbers; his home address, occupation, and known aliases; and the offense committed and sentence received. The notice includes the date and location of the escape, the circumstances under which his absence was discovered, and information on whether the prisoner is considered armed and dangerous. The notice informs readers of a possible reward, and gives the prison warden's name and two telephone numbers.

The Notice of Escaped Prisoner, although informative, has no legal effect. It is similar to the "wanted posters" the FBI places in the post office. It gives the reader the information necessary to recognize an escaped prisoner, but it does not order or authorize the reader to arrest the prisoner. We therefore find that the Notice of Escaped Prisoner was not an "other document ordering or authorizing defendant's arrest on a charge of escape." *Sairafi*, 801 F.2d at 692. We affirm the district court's ruling that apprehension of the defendant was not an arrest triggering the application of section 3161(b) of the Speedy

---

escape charge until after he was indicted. He was arrested without a warrant and returned to

federal custody to serve his tax sentence.

Trial Act. There was thus no violation of the Act.

## B. Preindictment Delay

██ The defendant also argues that his constitutional right to a speedy trial was violated by the delay between his arrest and indictment. U.S. Const. amend. VI. The sixth amendment right, however, only attaches when a formal criminal charge is instituted and a criminal prosecution begins. *United States v. MacDonald*, 456 U.S. 1, 6–7, 102 S.Ct. 1497, 1500–01, 71 L.Ed.2d 696 (1982). Sixth amendment rights do not protect an individual against unreasonable delay before accusation by arrest or the filing of charges. *United States v. Marion*, 404 U.S. 307, 313, 92 S.Ct. 455, 459, 30 L.Ed.2d 468 (1971). We have found that the defendant's apprehension was not an arrest for purposes of 3161(b) because no new restraints were imposed; we similarly find that the defendant's sixth amendment rights did not attach until he was indicted for the escape charge. Before the indictment was returned, the defendant was not the subject of a criminal prosecution. *MacDonald*, 456 U.S. at 6–7, 102 S.Ct. at 1500–01.

The defendant asks us to apply the four-part balancing test of *Barker v. Wingo*, 407 U.S. 514, 530–33, 92 S.Ct. 2182, 2192–93, 33 L.Ed.2d 101 (1972), to find that his speedy trial rights have been violated. He notes that this balancing test has been held to apply to the delay between arrest and indictment. *United States v. Edwards*, 577 F.2d 883, 888 (5th Cir.), *cert. denied*, 439 U.S. 968, 99 S.Ct. 458, 58 L.Ed.2d 427 (1978). This court, however, has recently used the *Barker* test to determine "whether *post-indictment* delay deprived a defendant of his right to a speedy trial." *United States v. Brock*, 782 F.2d 1442, 1445 (7th Cir.1986) (emphasis added). Because we have found that the defendant has suffered no new restraints on his liberty, but only the continuation of previously imposed restrictions, we agree with the district court that *Barker* is not applicable to this situation. *Cf. United States v. Fuesting*, 845 F.2d 664, 668 n. 7 (7th Cir.1988) (court must undertake *Barker* balancing test when defendant is subject to incarceration or bail). The defendant was not incarcerated because of his escape, but because of his tax conviction.

██ The defendant has not challenged the government's delay in this case under the due process clause of the fifth amendment, the more appropriate constitutional protection against preindictment delay. *United States v. Lovasco*, 431 U.S. 783, 789, 97 S.Ct. 2044, 2048, 52 L.Ed.2d 752 (1977); *United States v. Williams*, 738 F.2d 172, 175 (7th Cir.1984). A successful due process challenge to preindictment delay requires that a defendant demonstrate actual and substantial prejudice from the delay. *United States v. Valona*, 834 F.2d 1334, 1337 (7th Cir.1987). Because the defendant has alleged some prejudice from the delay in this case, we will discuss his allegations in the context of the fifth amendment.

██ "If the delay has caused such substantial prejudice to the defendant so as to outweigh the government's reason for the delay, the indictment may be dismissed." *Id.* at 1338. In order to demonstrate the requisite level of prejudice, however, the defendant's allegations "must be specific, concrete and supported by the evidence—vague, speculative or conclusory allegations will not suffice." *Fuesting*, 845 F.2d at 669. If a defendant meets this burden, then the court will weigh "the prejudice to the defendant against the government's reasons for the delay." *Valona*, 834 F.2d at 1338.

The defendant here has not adequately alleged prejudice from the delay before his indictment. In his brief he recognizes that prejudice to the defense from the delay is speculative. The defendant suggests, however, that the death of an FBI agent with whom he had spoken while on escape status deprived him of a corroborating source for his version of the disputed facts. The defendant also mentions that he suffered prejudice from the faded memory of a Bureau of Prisons employee as to conversations dealing with the defendant's theory of defense.

The defendant has not explained to us exactly what the FBI agent's testimony would have been. We have gleaned from the transcript of the status hearing on the firearms case in the district court in Florida that the defense theory seems to have been that United States Customs officials arranged for the defendant's escape in order to use him in a sting operation in Florida. The defendant has not shown how the FBI agent's testimony would support this surprising theory. Presumably, the Bureau of Prisons employee, were his memory better, would provide testimony in support of this theory. If the defendant's explanation of his escape (which we have only second-hand) is even conceivable, it is difficult to imagine how the Bureau of Prisons employee could fail to remember such an occurrence.

In *Williams* we stated that we would find prejudice from a witness's death and unavailability to testify on the defendant's behalf "only if we are convinced that [the witness] would have testified, that his testimony would have withstood cross-examination, and that the jury would have found [him] a credible witness." 738 F.2d at 176. The defendant has failed to convince us that there is the slightest validity to his imaginative theory or that these two witnesses would support it in any way. Consequently he has failed to establish actual and substantial prejudice from the preindictment delay.

## C. Collateral Estoppel

Although it has been established that the defendant's apprehension was not pursuant to an arrest warrant, this fact was not clear when the defendant was charged with the firearms offense in Florida. In fact, the government stated at several points during the status hearing that the defendant had been arrested pursuant to a warrant for the escape charge. The district court in Florida so found in its order denying defendant's motion to dismiss. Despite the fact that no warrant was issued until after the defendant was indicted for the escape, the defendant seeks to hold the government to its representations to the Florida district court through the use of collateral estoppel.

We have held that "the doctrine of collateral estoppel applies to criminal prosecutions and prohibits the relitigation of issues decided in a defendant's favor by a valid final judgment." *United States v. Magnus*, 743 F.2d 517, 524 (7th Cir.1984). The defendant bears the burden of proving collateral estoppel. *United States v. Patterson*, 827 F.2d 184, 189 (7th Cir.1987). The defendant must demonstrate that

> 1) a final determination on the merits has been reached in a case, 2) the issues for which estoppel is sought were essential to that decision, 3) the party against whom estoppel is invoked had a full opportunity to address the issues in that case, and 4) the issues are identical to the issues in the case in which estoppel is sought.

*Ray v. Indiana & Mich. Elec. Co.*, 758 F.2d 1148, 1150 (7th Cir.1985); *Parklane Hosiery v. Shore*, 439 U.S. 322, 326 n. 5, 99 S.Ct. 645, 649 n. 5, 58 L.Ed.2d 552 (1979).

The district court in this case did not believe that the government should be bound by the mistaken statements of its attorney and the court in Florida. Recognizing that the doctrine of collateral estoppel can apply to the government in criminal prosecutions, the court also noted that "collateral estoppel only applies to issues 'which were necessary to [the] decision in a prior case between the same parties.'" *United States v. Zukowski*, No. 87–40009 (S.D.Ill. June 29, 1987) (order denying defendant's motion to dismiss) (quoting *Evans v. Wilkerson*, 605 F.2d 369, 372 (7th Cir.1979)). The district court in Illinois found that the issue of whether the defendant was arrested pursuant to a warrant on the escape charge was not necessary to the Florida court's determination of the defendant's speedy trial rights regarding the firearms charge. We agree.

The only question before the district court in Florida was when the Speedy Trial Act was triggered for the firearms charge. To answer this question, the court only needed to determine when the defendant was "accused" of the firearms violation,

either through arrest and charge or by indictment. *United States v. Robinson,* 767 F.2d 765, 768 (11th Cir.1985). The defendant's apprehension was not for the firearms violation; the firearms were discovered only after the arrest when the defendant consented to a search of his apartment. The defendant was not charged with the violation at that time. He was not charged until an indictment was returned almost a year later. The court found that the Speedy Trial Act had not been violated because the defendant was not accused of the firearms offense until the indictment was returned.

In reaching this conclusion, the Florida district court had no need to rule on the existence or absence of a warrant for the defendant's escape arrest. It had only to decide whether the defendant was charged at that time with the firearms offense. Therefore, the court's finding that the defendant was arrested on a warrant for escape was unnecessary and should not bind the government in this case.

We note additionally that it is doubtful that the parties had an adequate opportunity to litigate the warrant issue. It came up at a status conference rather than a motion hearing, when the court *sua sponte* raised various speedy trial questions. The defendant had not made a motion regarding these rights, so the prosecutor was not on notice that the Speedy Trial Act would be an issue at the status conference. Even if the existence of an arrest warrant had been a necessary component of the Florida district court's decision, we would be hesitant to apply the doctrine of collateral estoppel in these circumstances.

## III.  CONCLUSION

We agree with the district court in Illinois that the defendant's statutory and constitutional rights to a speedy trial were not violated in this case. The government is not collaterally estopped from taking this position. The district court's opinion, therefore, is

AFFIRMED.