POSNER, Circuit Judge.
The Sixth Amendment to the Constitution provides that “in all criminal prosecutions, the accused shall enjoy the right to a speedy ... trial.” The brevity of the provision is striking. There is no quantification of “speedy” and no specification of when in the course of a criminal investigation or prosecution the speedyJahal clock begins to tick. But the Supreme Court has held that it does not begin to tick “before a defendant is indicted, arrested, or otherwise officially accused.” United States v. MacDonald, 456 U.S. 1, 6, 102 S.Ct. 1497, 71 L.Ed.2d 696 (1982). To the same effect see United States v. Manon, 404 U.S. 307, 313, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971), and United States v. Loud Hawk, 474 U.S. 302, 310, 106 S.Ct. 648, 88 L.Ed.2d 640 (1986). The question presented by this appeal is whether or in what circumstances the clock begins to tick when a federal complaint and detainer are served on a person who is being prosecuted by a state.
In United States v. Zukowski, 851 F.2d 174, 178 (7th Cir.1988), we interpreted MacDonald to hold that the “official accusation” to which the Supreme Court referred in that case must be a formal charging document, such as an indictment or information. We’ll see that a complaint, affidavit of probable cause, and detainer (the documents at issue in this case), even in combination, are not the equivalent of an indictment or information.
“Someone who is only the target of a criminal investigation has no right to have the government wrap up its investigation quickly and bring charges, even if the target is aware of the investigation.” United States v. Clark, 754 F.3d 401, 405 (7th Cir.2014); see also, e.g., Pharm v. Hatcher, 984 F.2d 783, 785 (7th Cir.1993). “[E]ven an arrest by the federal authori *814 ties is insufficient if the person is immediately released without any federal charges being filed.” United States v. Clark, supra, 754 F.3d at 405. (Clark was a Speedy Trial Act case, but we noted in it that “the Sixth Amendment speedy trial right, from which the Speedy Trial Act draws its substance, applies only to persons who are formally accused of a crime.” Id.) Only if an arrested person is detained pending indictment does the speedy-trial clock begin to tick upon arrest. See, e.g., United States v. Loud Hawk, supra, 474 U.S. at 310, 106 S.Ct. 648 (“when no indictment is outstanding, only the ‘actual restraints imposed by arrest and holding to answer a criminal charge ... engage the particular protections of the speedy trial provision of the Sixth Amendment,’ ” quoting United States v. Marion, supra, 404 U.S. at 320, 92 S.Ct. 455); Dillingham v. United States, 423 U.S. 64, 65, 96 S.Ct. 303, 46 L.Ed.2d 205 (1975) (per curiam).
Richardson was arrested by Indiana police on December 17, 2011, for committing a vicious domestic battery and intimidation with a deadly weapon, in violation of Indiana law. A search of his home, conducted the same day, revealed a remarkable collection of guns and ammunition — apparently he manufactured guns (from the gun parts) and also ammunition. Because he previously had been convicted in federal court of illegal possession of a firearm by a felon, his gun-related activities violated federal as well as state law. So just four days after his arrest the U.S. Attorney filed a criminal complaint and affidavit of probable cause in a federal court in Indiana, and a federal detainer in the jail in which Richardson was being held on the state charges.
Such a complaint must not be confused with a civil complaint. A civil complaint initiates a civil suit. Fed.R.Civ.P. 3. A criminal complaint can initiate only a misdemeanor prosecution. Fed.R.Crim.P. 58(b). A complaint that charges a felony can establish a basis for an arrest warrant, justify an arrest made without a warrant, initiate, continue, or expand an investigation, and notify other law enforcement agencies of its concern with the person arrested or investigated. Fed.R.Crim.P. 3, 4(a), 5(b); United States v. Alvarado, 440 F.3d 191, 200 (4th Cir.2006). But unlike an indictment or information, it cannot initiate a felony prosecution. An indictment or information must be signed by a government lawyer; a complaint, because it cannot initiate a felony prosecution, need not be, Fed.R.Crim.P. 3, 7(c)(1), and was not in this case. And even a complaint plus a detainer imposes no deprivation of liberty on the defendant.
All that the complaint in this case said is that the. agent of the Federal Bureau of Alcohol, Tobacco, Firearms and Explosives who signed it was swearing that “to the best of [her] knowledge and belief,” on a specified date the “defendant did unlawfully possess a firearm as a convicted felon” and was thus “in violation of’ of the federal criminal code. See 18 U.S.C. § 922(g)(1). This signals an investigation rather than a prosecution.
No more does an affidavit (filed with the complaint in this case) in support of a search warrant kick off a prosecution. United States v. Alvarado, supra, 440 F.3d at 200. As for a detainer, it merely informs the jail that a person held there is wanted on other criminal charges and the jail should therefore notify the agency that issued the detainer of the prisoner’s imminent release, so that the agency can arrest him. The federal court issued a warrant for Richardson’s arrest, but of course the warrant wasn’t executed, because he was already in jail. The state court set his bail at $500,000. He couldn’t make bail, and so *815 remained in jail throughout the state proceedings against him.
On March 21, 2013, approximately fifteen months after his arrest, Richardson pleaded guilty in state court to felony intimidation and was sentenced to time served. He would thus have been a free man had it not been for the federal detain-er. The day after he was sentenced the federal warrant for his arrest that had been issued immediately after his state arrest was executed, and he was jailed. The following month he was indicted on federal charges of being a felon in possession of firearms and also for illegal possession of a submachine gun (35 of the items found on his property were either submachine guns or parts of such guns).
Initially he was disposed to plead guilty to the federal charges, but he changed his mind and on January 28, 2014, filed a motion to dismiss the federal case on the ground that the government had violated his Sixth Amendment right to a speedy trial. He argued that the speedy-trial clock had started to tick when the federal complaint and detainer had been filed four days after his arrest on state charges. Between then and the issuance of his federal indictment 16 months had elapsed, which would indeed have been a considerable delay, raising a colorable speedy-trial issue, had the federal prosecution begun back in December 2011 when the gun cache was discovered. The government argues that the clock did not begin to tick until the federal warrant for Richard-son’s arrest was executed in March 2013 upon the completion of his state sentence.
His federal trial was scheduled for June 2013 and would thus have been “speedy” relative to the federal indictment had the trial not been delayed — but the delay was at the behest of Richardson, who that month said he would plead guilty and therefore asked for a continuance of the trial. Not until January of the following year did he repudiate his agreement to plead guilty, and move to dismiss the indictment on speedy-trial grounds. The district judge denied the motion. Richardson then pleaded guilty and was sentenced to 120 months in prison. His appeal is from the denial of his motion to dismiss the indictment. If it should have been granted, his conviction and sentence must be reversed.
He argues that he was “officially accused” of a federal crime when the federal government filed its complaint and detain-er the day after his arrest by state officers. Now the Supreme Court in MacDonald did not actually say that the speedy-trial clock begins to tick when there is an official accusation of a federal crime — rather that it doesn’t begin to tick before then; the official accusation is the earliest time at which it begins to tick. But subsequent cases, while continuing to cite MacDonald approvingly, regard “arrest [provided the person arrested isn’t immediately released], indictment, or other official accusation” as a trigger rather than merely as an analytical starting point. See, e.g., Doggett v. United States, 505 U.S. 647, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992); United States v. Loera, 565 F.3d 406, 412 (7th Cir.2009); Pharm v. Hatcher, supra, 984 F.2d at 785. That evolution of the law can’t help Richardson, however. The relevant arrest (that is, one followed by detention) must be for a suspected federal crime, and there was no federal arrest when he was arrested on state charges, even though the feds were in the vicinity, so to speak, having accompanied state officers on the search of his premises. See United States v. Clark, supra, 754 F.3d at 405.
The distinction is important. To hold that the clock began to run upon the commencement of the state proceeding against *816 Richardson, on the theory that he was in. effect officially accused of a federal as well as a state crime, would produce a messy clash of governments (Indiana’s state government and the federal government) with no likely benefit to the defendant. The state had arrested him primarily for domestic battery, a state not federal offense. The purpose of filing the federal complaint and detainer was just to make sure that he wasn’t released before the feds were able to arrest him and book him for violation of federal gun laws, if they decided to prosecute him.
Had the speedy-trial clock begun to run upon the filing of the complaint and detain-er, the U.S. Attorney would have been under pressure to indict Richardson forthwith and proceed with all deliberate speed to trial — with the result that Richardson would have been fighting prosecution by two sovereign entities, the State of Indiana and the United States of America, at the same time. If the state decided to take a pass, it would be throwing away its domestic-battery charge, which had no counterpart in the federal case. If the feds took a pass, they would be throwing away gun charges more extensive than those involved in the state prosecution. And had the state and federal prosecutions proceeded simultaneously, Richardson might squawk at having to defend himself in two trials at the same time, while if one trial were delayed he would complain of a speedy-trial violation.
We can’t think of a good reason for the Justice Department to have barged into the state’s proceeding by instituting an overlapping federal prosecution. When a person is credibly accused of violating both federal and state law, he exposes himself to prosecution by both federal and state authorities — and thus to two separate- proceedings, which rarely can efficiently be conducted simultaneously. As noted in United States v. Schreane, 331 F.3d 548, 554-55 (6th Cir.2003) (for clarity, we omit citations and internal quotation marks and rearrange some sentences), when state and federal charges are lodged against a defendant “at least one sovereign ... will have to wait its turn at the prosecutorial turnstile. [For delay that is] due to the obvious need to allow the defendant to be prosecuted by the State without interference by the federal government” is unavoidable. “Customarily — although certainly not always — the jurisdiction with custody of the accused ... is afforded the first opportunity to prosecute the defendant. This longstanding practice is rooted in the respect accorded to a custodial sovereign to resolve its criminal proceedings before relinquishing custody to another jurisdiction. This practice also can be understood in terms of the orderly and efficient prosecution of cases in our dual system of criminal justice.... [S]imply waiting for another sovereign to finish prosecuting a defendant is without question a valid reason for delay that weighs in favor of the government.”
The custodial sovereign in this case was the State of Indiana. It had “first dibs” (the right to go first), therefore, on prosecuting Richardson. It would be unrealistic to think that if the accused is in custody, only minimal paperwork is needed to shift custody as needed between the two governments from time to time. That would turn the criminal process into a game of shuttlecock. See United States v. Watford, 468 F.3d 891, 900-03 (6th Cir.2006); United States v. Grimmond, 137 F.3d 823, 827-29 (4th Cir.1998). The sequencing of prosecutions and the resulting delay, often long, of one of them, are the inevitable consequence of a governmental structure that - gives separate governments overlapping jurisdictions.
*817 Richardson points out that there was “cooperation” between state and federal officers from the outset. When his girlfriend complained to the police about his beating her up, she mentioned his collection of guns, and so the police informed the ATF, whose agents joined the police in searching Richardson’s property and seizing the guns, gun parts, and ammo found there. But the feds had no interest in or for that matter jurisdiction over the domestic battery and so let the state proceed first. Had the state been the feds’ cat’s paw, charging Richardson with the battery offense solely in order to detain him pending an eventual federal indictment, the state prosecution would have been a de facto federal prosecution and the speedy-trial clock would have started to run when Richardson was charged by the state. See, e.g., United States v. Dyer, 325 F.3d 464, 468 (3d Cir.2003). But that isn’t what happened. See United States v. Clark, supra, 754 F.3d at 405-06.
Even if, contrary to what we’ve said, the speedy-trial clock began to tick with respect to the federal prosecution when the federal complaint, affidavit of probable cause, and detainer were filed, there would still be no violation of the Sixth Amendment. Like most constitutional rights, the right to a speedy trial is not absolute; it yields in the face of compelling circumstances. The most obvious such case is where the defendant prevents a speedy trial from being held because he has fled, or refused to enter, the jurisdiction in which the trial would be held, as in In re Kashamu, 769 F.3d 490, 493-94 (7th Cir.2014). One step down, but deemed important in Barker v. Wingo, 407 U.S. 514, 532, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), is a defendant’s “failure to assert the right [to a speedy trial],” which the Court said “will make it difficult for a defendant to prove that he was denied a speedy trial.” There were reasons for delay in this case, and none for attempting to try the defendant in federal court while he was defending himself in state court, or insisting that he be tried first in federal court and only after a judgment was entered by that court tried in state court.
It’s not as if delay always favors the prosecutor, and so always supports a speedy-trial claim. Many defendants are content or even prefer to sit around and wait for witnesses to die or vanish or forget. For if the defendant is guilty there are likely to be more witnesses helpful to the government’s case than to the defendant’s. And the government will usually need more witnesses than the defendant because the government must prove guilt beyond a reasonable doubt, and the defendant has no burden of proof whatsoever. And so on average the death,' disappearance, forgetfulness, or recantation of a witness will favor the defendant and thus put him on the slow side of the case.
Richardson relies heavily on Smith v. Hooey, 393 U.S. 374, 89 S.Ct. 575, 21 L.Ed.2d 607 (1969), which preceded the MacDonald and Marion decisions. The defendant was in federal prison on federal charges. A state had filed formal charges against him and he wanted a trial on those charges. The state refused. It said he’d have to wait till the completion of his federal prison sentence. The state gave no reason for not complying with his request for a speedy trial other than that it was its policy not to try someone who was in prison on other charges. The Supreme Court, which had already held that the Sixth Amendment’s speedy-trial right would be deemed to have been made applicable to state prosecutions by the Fourteenth Amendment, Klopfer v. North Carolina, 386 U.S. 213, 223-26, 87 S.Ct. 988, *818 18 L.Ed.2d 1 (1967), didn’t think the state’s reason adequate.
But not only did Richardson not ask for a federal trial during his state confinement; he had not yet been convicted and sentenced by the state court. He was still awaiting trial, so that had he been placed on trial for his federal offenses the proceedings would have overlapped, a result likely to sow confusion. See United States v. Watford, supra, 468 F.3d at 902-03; United States v. Grimmond, supra, 137 F.3d at 828-29.
All this said, we acknowledge that the extreme vagueness of the speedy-trial clause of the Sixth Amendment, and the limited clarification of it that has been attempted by the Supreme Court, open up a potential for prejudice to a defendant caught between two sovereigns. Suppose Indiana had dawdled in prosecuting Richardson and as a result not 16 months but 3 years had elapsed between the filing of the federal complaint, affidavit, and detainer and the federal indictment. A delay of such length might have seriously prejudiced Richardson’s defense. The best solution in such a case might be, as suggested in Pharm v. Hatcher, supra, 984 F.2d at 786-87, to inquire whether the prejudice was so great, and not excused by any legitimate need of the government to complete a thorough investigation before indicting, that the delay had denied the defendant due process of law. See also United States v. Lovasco, 431 U.S. 783, 796-97, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977); United States v. Zukowski, supra, 851 F.2d at 178; United States v. Samples, 713 F.2d 298, 302 (7th Cir.1983); United States v. Sanders, 452 F.3d 572, 581-83 (6th Cir.2006). Richardson argues that he was hurt by the 16-month delay — that had it not been for the federal detainer the state court would have fixed his bail at an amount he could have paid. But had he made bail the feds would have arrested him and, given the magnitude of his illegal firearm business, the federal court would either have denied bail or set it at a level, comparable to that set by the state court for its narrower set of charges, that he could not afford. And finally there is no indication that the government’s delay in indicting him was intended to impede his defense.
The district judge was right to deny the motion to dismiss the federal prosecution.
Affirmed.