HAMILTON, Circuit Judge,
concurring in the judgment.
I agree with my colleagues that defendant Jackie Richardson’s speedy trial right under the Sixth Amendment was not violated here. I would follow a much narrower path to that conclusion, however, to stay more consistent with Supreme Court precedent and to preserve the ability to deter or prevent unduly prejudicial delay in future cases.
The majority affirms the district court’s judgment on two grounds: (1) the combination of a federal complaint, arrest warrant, and detainer does not trigger speedy trial concerns because it does not add up to an “official accusation” within the meaning of United States v. MacDonald, 456 U.S. 1, 6, 102 S.Ct. 1497, 71 L.Ed.2d 696 (1982), and in the alternative, (2) Richardson has not shown a violation of his right to a speedy trial. I agree with my colleagues on the second ground but not the first.
Start with our agreement. Richardson has preserved his Sixth Amendment objection only as to the sixteen months between the filing of the federal complaint and detainer on December 20, 2011 and his federal indictment on April 10, 2013.' (He has not invoked the more detailed statutory *819 protections of the Speedy Trial Act, 18 U.S.C. § 3161 et seq., which would not help him here.) To weigh whether Richardson’s Sixth Amendment right was violated by that sixteen-month delay, we should apply the factors set forth in Barker v. Wingo, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). See Doggett v. United States, 505 U.S. 647, 655-56, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992) (applying Barker factors). The factors are the length of the delay, the reasons for the delay, whether the defendant asserted his right to a speedy trial, and any prejudice the defendant suffered by the delay.
These factors show that Richardson’s Sixth Amendment sixteen-month delay, is sufficient to justify concern and further analysis, as the majority recognizes. United States v. Arceo, 535 F.3d 679, 684 (7th Cir.2008) (a delay approaching one year is presumptively prejudicial); United States v. Oriedo, 498 F.3d 593, 597 (7th Cir.2007) (same).
The second and third Barker factors, which are closely related here, weigh heavily against Richardson. The reasons for the delay are best seen as shared between the government and the defendant. The federal government chose to defer to the state prosecution. That was certainly a reasonable decision. It was also a decision that Richardson did nothing to challenge until after the state prosecution was complete, after the federal prosecution was well under way, and after the challenged delay had already passed. In such a situation, where the defendant faces both federal and state prosecutions in sequence, if the defendant indicates no desire to force the deferred prosecution forward, there should be no Sixth Amendment violation.
In other cases, however, a defendant in this situation — target of a federal complaint and detainer while in state custody — should be entitled to require the federal prosecutors to “put up or shut up.” Given the fruits of the search of Richardson’s property, the federal prosecutors no doubt could have “put up” quite readily, but that will not always be the case.
The fourth Barker factor is whether the delay prejudiced the defendant. Richardson has not shown prejudice from the delay in this case. For purposes of the Sixth Amendment speedy trial right, prejudice can take many forms, of course, including loss of liberty, disruption of employment and association with other people, financial drains, and continuing harm to reputation. Oviedo, 498 F.3d at 600-01, citing United States v. Marion, 404 U.S. 307, 320, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971), and Barker, 407 U.S. at 532-33, 92 S.Ct. 2182. But Richardson’s claim falls short on this score. During the relevant time, he was in state pretrial custody and was busy defending the state criminal charges. He has not identified loss of exculpatory evidence or other obvious forms of prejudice.
He argues on appeal that the federal detainer caused the state court to set his bail so high ($500,000) that he could not afford to post bond, so that the federal detainer caused him to be stuck in jail pending the resolution of his state charges. That is possible, but on this record, we would have to speculate about the role the federal detainer played, if any, in the state court’s initial bail decision. Richardson was accused in state court of a violent attack on his girlfriend. He also had in his home an extraordinary arsenal of illegal firearms and ammunition, as well as equipment to manufacture firearms. Perhaps the state court viewed him as dangerous enough to set an impossible bail amount regardless of the federal accusation. Perhaps the federal detainer tipped the balance in the state court’s bail decision. Richardson does not seem to have chai *820 lenged the state court’s bail decision, and we cannot set aside his federal conviction based on speculation about the role the federal detainer might have played.[1]
Richardson also argues that the delay in the federal prosecution caused him prejudice by making the prior state conviction part of his criminal history, raising the sentencing guideline range for his federal convictions. That should not count as a relevant form of prejudice. If the federal prosecution had gone forward first, then his federal convictions would have been relevant criminal history for the state courts. The Sixth Amendment right to a speedy trial does not give a defendant a constitutional right to the more advantageous sequence in those sentencing decisions.
Under this reasoning, then, Richardson’s Sixth Amendment speedy trial right was not violated, and on this basis, I agree we should affirm his conviction. I disagree, however, with the majority’s more sweeping pronouncement — which is not necessary to resolve this case — that the combination of a federal complaint, arrest warrant, and detainer can never trigger speedy trial concerns.
That pronouncement is based on too narrow a reading of Supreme Court decisions in this area. The majority’s reasoning also fails to appreciate the risk of prejudice, especially to an innocent defendant, and exaggerates the speedy trial doctrinal problems and logistical difficulties of managing parallel state and federal prosecutions.
First, the Supreme Court decisions. The majority’s reasoning conflicts with Smith v. Hooey, 393 U.S. 374, 89 S.Ct. 575, 21 L.Ed.2d 607 (1969). Smith was in federal prison but faced criminal charges in state court. He wanted to be brought to trial on the state charges and sought for six years to get a prompt trial. The state refused because he was already in prison serving another sentence. After the state court refused to dismiss the charges, the Supreme Court reversed and held that the state was required at least to make a good faith effort to try Smith by asking the federal government to transfer his custody for a state trial.
Smith pointed out that the purposes of the speedy trial guarantee can apply even to a person being held in custody by another sovereign. Undue delay may cause the person to lose forever the possibility of at least partially concurrent sentences; the conditions of his current custody may be harsher than otherwise; the threat of another pending charge may be as oppressive as for a person who remains free; and long delays can impair a person’s ability to defend against' the pending charge. Smith, 393 U.S. at 378-79, 89 S.Ct. 575. The Smith Court did not suggest that its reasoning depended on whether the defendant was in federal custody or state custody, or whether the second, pending case was in federal or state court. Its reasoning should apply here, where the federal and state roles are reversed.
The majority points out correctly that Smith pushed for a speedy state trial, while Richardson made no such effort here. In my view, that’s the decisive difference between the cases, and it’s why I concur in the judgment here. The speedy *821 trial issue, however, is better addressed under the Barker framework. The majority’s rigid conclusion that the speedy trial right does not apply at all here conflicts with the reasoning of Smith.
In fact, in the wake of Smith v. Hooey, the Supreme Court has applied a standard that is more pragmatic and flexible than the majority’s approach. The constitutional right attaches when a defendant is “indicted, arrested, or otherwise officially accused.” United States v. MacDonald, 456 U.S. 1, 6, 102 S.Ct. 1497, 71 L.Ed.2d 696 (1982) (emphasis added), citing United States v. Marion, 404 U.S. 307, 313, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971); see also Doggett, 505 U.S. at 655, 112 S.Ct. 2686.
My colleagues contend that a complaint does not “officially accuse” a person of a crime within the meaning of MacDonald, Marion, and Doggett. The complaint itself shows that is about as official an accusation as can be imagined that is not an indictment or information. (The Supreme Court opinions refer to other official accusations as a category distinct from an indictment or federal arrest that were also mentioned.) A complaint asserts, under oath, that there is probable cause to believe a particular person 'committed a particular crime. It is “a written statement of the essential facts constituting the offense charged.” Fed.R.Crim.P. 3. The majority points out that a complaint need not be signed by a prosecutor, but how is such a specific accusation signed under oath by a federal law enforcement officer any less an “official accusation” within the meaning of Doggett, MacDonald, or Marion? It is not an indictment or information, but it is surely an “official accusation.” A complaint, especially when followed by an arrest warrant and detainer, is not merely a sign of a pending investigation, as my colleagues contend. It makes a quite specific, quite official accusation of a federal crime.
At least three other circuits agree with the approach I would adopt. In a case indistinguishable from this one, United States v. Thomas, 55 F.3d 144 (4th Cir. 1995), the Fourth Circuit held that the “combination of the criminal complaint, the arrest warrant, and the federal detainer were sufficient to implicate the speedy trial provision of the Sixth Amendment.” Id. at 149, citing Dickey v. Florida, 398 U.S. 30, 90 S.Ct. 1564, 26 L.Ed.2d 26 (1970), and Smith, 393 U.S. at 377-83, 89 S.Ct. 575. Having determined that the speedy trial right attached, the Thomas court then applied the Barker factors and found no violation, largely for the same reasons Richardson’s claim fails here: the defendant did not push for a speedy federal trial, and federal prosecutors reasonably delayed the federal prosecution so that the state prosecution could run its course without interference. Id. at 149-51. That’s the better approach here.
Taking an even broader approach, the Ninth Circuit held in United States v. Terrack, 515 F.2d 558, 559 (9th Cir.1975), that a complaint was a sufficiently official “accusation” to trigger the defendant’s Sixth Amendment speedy trial right under the reasoning of Marion. The Ninth Circuit then applied the Barker factors to find no violation where the post-complaint, preindictment delays had been caused first by the defendant’s evasion of capture and then by mutual consent during negotiations between the defendant and the government. Id. The Ninth Circuit has applied similar reasoning in Northern v. United States, 455 F.2d 427, 429 (9th Cir. 1972) (filing of federal complaint against defendant in state custody triggered Sixth Amendment speedy trial right, but defendant’s own efforts to block removal from state custody defeated his claim).[2]
*822 In another similar case, the First Circuit, in United States v. Henson, 945 F.2d 430, 437 (1st Cir.1991), assumed without explanation that the issuance of a federal complaint, arrest warrant, and detainer for a person in state custody was sufficient to trigger the Sixth Amendment speedy trial inquiry, though again the Barker factors were applied to find no violation in that case. Id. at 437-39.
As explained above, I think the Supreme Court’s cases amply support the approach I have described. But I acknowledge that after Smith, in cases presenting Speedy Trial Clause issues different from the issue here, some of the Supreme Court’s language, including “official accusation,” leaves room for debate about its application to this case. See, e.g., the majority and dissenting opinions in United States v. Loud Hawk, 474 U.S. 302, 106 S.Ct. 648, 88 L.Ed.2d 640 (1986) (holding that period after dismissal of indictment, during which defendant was not under indictment, incarcerated, or subject to substantial restrictions on liberty, did not count toward Speedy Trial Clause claim).[3]
Given this room for argument about the Supreme Court’s guidance, we should consider the problem more broadly to serve the purposes of the Speedy Trial Clause and to adopt a workable rule. The majority offers a pragmatic rationale for its broad rule. It is concerned that recognizing a speedy trial right under these circumstances would produce “a messy clash” between the state and federal governments “with no likely benefit to the defendant.” These concerns are real but do not justify the sweeping rule adopted by the majority. They are better managed under the framework of the Barker factors.
Consider the possible benefit to the defendant. Surely an innocent defendant faces the greatest risk of prejudice by delay. Evidence of his innocence may disappear or erode as memories fade, records are lost, or witnesses move away. The majority recognizes the inverse proposition: “For if the defendant is guilty there are likely to be more witnesses helpful to the government’s case than to the defendant’s .... And so on average the death, disappearance, forgetfulness, or recantation of a witness will favor the defendant and thus put him on the slow side of the case.” Op. at 817-18 (emphasis added). That’s probably right, but if the accused is innocent, the effects of delay are likely to be exactly the opposite, undermining the ability of the accused to defend himself. Protecting innocent defendants from such unfairness is a core purpose of the Sixth Amendment speedy trial right. E.g., United States v. Ewell, 383 U.S. 116, 120, 86 S.Ct. 773, 15 L.Ed.2d 627 (1966).
The majority’s concern about a “messy clash” of governments is legitimate but exaggerated. It does not justify the majority’s broad rule. Concerns about bu *823 reaucratic friction certainly should not trump the right of the accused (who is presumed innocent) to push for prompt resolution of the charge or other official accusation against him. Where a defendant faces both state and federal charges, state and federal prosecutors already must confer and agree on how to proceed. That happens all the time; they typically know each other well.
If a defendant insists, as I think he should be able to after official accusations by each government, on speedy trials in both cases, the coordination of scheduling is no more difficult a task than state and federal courts accomplish routinely. That happens when there are. cases involving the same party, the same witness, or even the same lawyer. And if the accused is in custody, only minimal paperwork is needed to shift custody as needed between the two governments from time to time.
To support its concerns about the “messy clash” between state and federal prosecutions, the majority draws heavily from the Sixth Circuit’s opinion in United States v. Schreane, 331 F.3d 548, 554-56 (6th Cir.2003), but Schreane actually supports the approach I would adopt. In Schreane the Sixth Amendment speedy trial right had been triggered by the defendant’s federal indictment. His federal prosecution was put on hold while a state prosecution went forward to conviction and sentencing. The Sixth Circuit discussed the reasons for the delay, which were obviously legitimate, but it did so in the context of applying the Barker factors that I argue should be applied here. The same is true of the majority’s other cases, United States v. Watford, 468 F.3d 891, 900-03 (6th Cir.2006), and United States v. Grimmond, 137 F.3d 823, 827-29 (4th Cir.1998).
In Schreane the Sixth Circuit did not suggest, much less hold, that the speedy trial right should never attach because of concerns about possible federal-state interference. In Schreane the defendant made no effort to push for an earlier federal trial while his state case was pending, 331 F.3d at 557, so under the approach I advocate, a defendant like Schreane would also lose.[4]
If, on the other hand, a defendant insists on speedy trials in both state and federal cases, and if there is actually a good reason for one prosecution to wait for the other to finish in the particular case, the Barker framework will accommodate this concern, as in Schreane and Thomas. See United States v. Thomas, 55 F.3d at 150-51 (federal prosecutors reasonably delayed the federal prosecution to decrease safety risks and administrative costs, which favored finding no violation of defendant’s constitutional speedy trial right under Barker reason-for-delay factor).
The majority virtually concedes the risk posed by its approach, acknowledging the “potential for prejudice to a defendant caught between two sovereigns,” and describing a scenario where three years lapse between the filing of a federal complaint, affidavit of probable cause, and detainer and the federal indictment. The majority also recognizes that this situation might seriously prejudice the defense. Under its approach, though, the speedy trial guarantee would not offer any protection at all to a defendant caught in this snare. The majority suggests a potential solution: the defendant could bring a due process challenge instead.
*824 But why force a square peg into a round hole? After an “official accusation,” the speedy trial right should apply. The speedy trial cases and the Barker factors offer a framework that is tailor-made to address the issues that can arise. The due process approach does not. In fact, it’s telling that none of the cases cited by the majority have actually found a due process violation on such facts. See United States v. Lovasco, 431 U.S. 783, 796, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977) (“We therefore hold that to prosecute a defendant following investigative delay does not deprive him of due process, even if his defense might have been somewhat prejudiced by the lapse of time.”) (emphasis added); United States v. Zukowski, 851 F.2d 174, 178 (7th Cir.1988) (suggesting that due process is more appropriate challenge but finding no due process violation because pre-indictment delay did not prejudice defendant); United States v. Samples, 713 F.2d 298, 302 (7th Cir.1983) (no due process violation where defendant challenged twenty-month delay between dismissal of first indictment and re-indictment). The majority emphasizes Pharm v. Hatcher, 984 F.2d 783 (7th Cir.1993), as support for this potential solution, but Pharm stated flatly: “The Due Process Clause ... plays only a limited role in protecting against oppressive prosecutorial delay. In fact, we have never found pre-accusation delay rising to the level of a constitutional violation.” Id. at 786 (citation omitted). On closer inspection, the due process cases do not offer much of a solution to these concerns.[5]
The better solution is to recognize that a federal complaint and arrest warrant filed under Federal Rules of Criminal Procedure 3 and 4 add up to an “official accusation” of a crime that • starts the Sixth Amendment speedy trial clock, at least where the suspect is in state custody and subject to a federal detainer. Richardson has not established a violation of his speedy trial right, but we should not foreclose the possibility that another defendant could.

. The majority speculates at page 11 that if Richardson had made bail in the state court, a federal court would either have denied bail or set bail deliberately at a level he could not afford. In fact, in the Southern District of Indiana, pretrial release and detention decisions under 18 U.S.C. § 3142 are based on estimates of the defendant's risk of flight and danger to the community. Pretrial release in that district is almost never conditioned on the defendant's ability to post any bail amount at all.

. There are, however, other Ninth Circuit cases taking a narrower approach. See Ar *822 nold v. McCarthy, 566 F.2d 1377, 1382 (9th Cir. 1978) (speedy trial right engaged by arrest and arraignment, not by earlier complaint); Favors v. Eyman, 466 F.2d 1325, 1327-28 (9th Cir. 1972) (same, even though defendant was in state custody on unrelated charge).

. At page 6, the majority relies on United States v. Clark, 754 F.3d 401, 405 (7th Cir. 2014), to say that a federal indictment, federal information, or federal arrest is necessary to trigger speedy trial concerns. That is correct under the plain text of the Speedy Trial Act, see 18 U.S.C. § 3161(b) & (c), but that is all that Clark decided. See 754 F.3d at 405-07. Clark did not address the Sixth Amendment at all, so its analysis cannot help the majority on this point. Despite their common purposes, the constitutional and statutory standards differ as to important details, and we have recognized that either provision may be violated without violating the other. E.g., United States v. Loera, 565 F.3d 406, 412 (7th Cir. 2009).

. One odd feature of Schreane was that the defendant apparently did not learn of his federal indictment until after he had been sentenced in state court and moved to a state prison. 331 F.3d at 557. If he had known earlier and had still failed to seek a speedy federal trial, the Sixth Circuit said that the third Barker factor would "weigh heavily against him." Id. That is Richardson's situation, as I view this case.

. The strongest support for the majority’s approach seems to come from United States v. Zukowski, 851 F.2d 174 (7th Cir.1988), where the defendant was in federal prison on tax charges. He escapéd but was arrested a few weeks later and transferred back to federal prison. He was indicted about twenty months later on an escape charge. Zukowski argued that his Sixth Amendment speedy trial right was violated by the delay between his arrest after the escape and his indictment for the escape. We rejected that argument, holding that Zukowski's Sixth Amendment right to a speedy trial “did not attach until he was indicted for the escape charge.” Id. at 178.
Zukowski is factually distinguishable. There, neither a criminal complaint nor an arrest warrant had been filed in connection with the escape. Id. at 176. In fact, the only document that had been issued was a "Notice of Escaped Prisoner,” which had "no legal effect.” Id. at 177. We noted that this document was "informational only” and did not "purport to order or authorize an arrest of the subject.” Id. Unlike here, there had been no official accusation. And if we were to ignore this important factual difference, it would be difficult to reconcile Zukowski with the Supreme Court’s reasoning in Smith, 393 U.S. at 378-80, 89 S.Ct. 575, and the "official accusation” language in MacDonald, Marion, and Doggett.