PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

v.                                              No. 04-4969

SAMUEL CONSTANZA ALVARADO,
          *Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Gerald Bruce Lee, District Judge.
(CR-04-35)

Argued: January 31, 2006

Decided: March 13, 2006

Before WILKINSON, NIEMEYER, and KING, Circuit Judges.

_____

Affirmed in part; vacated and remanded in part by published opinion. Judge Wilkinson wrote the opinion, in which Judge Niemeyer and Judge King joined.

_____

## COUNSEL

**ARGUED:** Mark Howard Bodner, Fairfax, Virginia, for Appellant. Kelli Hamby Ferry, Special Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee. **ON BRIEF:** Paul J. McNulty, United States Attorney, Michael J. Elston, Assistant United States Attorney, Ian R. Conner, Special Assistant United States Attorney, Alexandria, Virginia, for Appellee.

**OPINION**

WILKINSON, Circuit Judge:

The instant case touches upon the sovereign authority of the state and federal governments to create and enforce criminal laws. The Commonwealth of Virginia charged defendant with state drug offenses, provided him with counsel, and subsequently dismissed the charges against him. After filing a federal criminal complaint, federal investigators gave defendant appropriate *Miranda* warnings and then questioned him outside the presence of his state-appointed lawyer about his involvement in federal drug crimes. Defendant contends that the incriminating statements he made during this interrogation should have been suppressed at his federal trial, because they were taken in violation of his Sixth Amendment right to counsel.

The Sixth Amendment right to counsel attaches only to the specific offense with which a defendant is formally charged. *See Texas v. Cobb*, 532 U.S. 162, 167-68 (2001). We hold that federal and state crimes are necessarily separate offenses for the purposes of the Sixth Amendment, because they originate from autonomous sovereigns that each have the authority to define and prosecute criminal conduct. We further hold that the filing of a federal criminal complaint does not trigger the Sixth Amendment right. Since defendant's right to counsel had yet to attach to his federal offenses when he was interrogated, his remarks were properly admitted and we affirm his convictions. However, we vacate defendant's sentence and remand for resentencing pursuant to *United States v. Booker*, 125 S. Ct. 738, 755-56 (2005).

I.

On the evening of October 1, 2003, state and federal law enforcement officers were conducting surveillance of an Econo Lodge Motel in Dumfries, Virginia. The officers had received a tip from a confidential source that cocaine would be delivered to the motel. They observed Francisco Lara-Hernandez and another suspected drug trafficker enter the motel, and state law enforcement officers subsequently arrested them.

Special Agent Jordi Clop of the federal Bureau of Alcohol, Tobacco, and Firearms participated in this surveillance, and interrogated Lara-Hernandez after he was placed under arrest. Lara-Hernandez stated that he had recently returned to the hotel from North Carolina with approximately 500 grams of cocaine. He indicated to Clop that the cocaine was now across the street in Room 333 of the Days Inn Hotel. He also disclosed that three individuals, one wearing a red t-shirt, were in the room and that two vehicles, including a white truck, were associated with the drug ring. Law enforcement officers observed defendant Samuel Constanza Alvarado (Alvarado), clad in a red t-shirt, exit Room 333 and climb into a white truck. State police officers arrested defendant upon his entering the truck.

Defendant did not speak English, but Agent Clop was fluent in Spanish. Agent Clop gave defendant his *Miranda* warnings, and defendant agreed to talk with Clop. From this conversation, Agent Clop determined that defendant was staying in Room 338 of the Days Inn, and received defendant's permission to search the room. Law enforcement officers eventually recovered 250 grams of cocaine from Room 333 and a suitcase full of marijuana and a handgun from Room 338. In the early morning hours of October 2, 2003, defendant was transported to a police station in Prince William County, Virginia. Agent Clop interrogated him at the police station after defendant was again read his *Miranda* rights.

On October 2, the Commonwealth of Virginia issued arrest warrants for Alvarado. The Commonwealth charged him with both possession with intent to manufacture, sell, give, or distribute cocaine, *see* Va. Code Ann. § 18.2-248 (2004), and conspiracy to manufacture, sell, give, or distribute cocaine, *see id.* §§ 18.2-22, .2-248. According to the warrants, these charges concerned only the events on or about October 2, 2003. Defendant requested counsel, and the Commonwealth appointed him a lawyer. Virginia retained custody of defendant until December 5, 2003, when he had his preliminary hearing. At this hearing, the Commonwealth dismissed its charges against him.

On December 4, 2003, the day prior to Alvarado's preliminary hearing in state court, federal agents had filed a federal criminal complaint against defendant, and requested a warrant for his arrest. This warrant was issued. *See* Fed. R. Crim. P. 3, 4(a). Agent Clop was

present at the Prince William County courthouse when defendant's state charges were dismissed, and immediately took him into federal custody. Defendant was subsequently transported to a Prince William County police station.

At the station, Alvarado told Agent Clop that he was glad to see him and wanted to give him his side of the story. Agent Clop interrupted defendant to give him *Miranda* warnings. In this conversation, defendant provided incriminating statements about his involvement in the drug conspiracy. Specifically, he described in detail the events of October 1-2, 2003. He also mentioned that he had gone on a previous trip to obtain cocaine from a source in North Carolina, and that he had been involved with other coconspirators in drug distribution since at least August 2003. After about forty-five minutes of questioning, Agent Clop took defendant before a judge to make his initial appearance.

On February 5, 2004, a grand jury indicted Alvarado on two counts. First, it charged him with conspiring to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 846 (2000). According to the indictment, defendant conspired with at least three different individuals between August 2003 and October 2003. Second, the grand jury charged Alvarado with distributing cocaine on or about September 27, 2003, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 (2000). Prior to trial, defendant moved to suppress all the incriminating statements made over the course of his conversations with Agent Clop. Defendant alleged that these statements were taken in violation of his Fifth and Sixth Amendment rights to counsel. The district court denied his motion, and found Agent Clop properly read defendant his *Miranda* rights.

Alvarado was tried in front of a jury between April 28 and May 4, 2004. At the trial, Agent Clop testified about the incriminating remarks that defendant made to him on December 5, 2003. The jury convicted defendant on both counts. Based on the Presentence Investigation Report, the district court enhanced defendant's sentence on a number of grounds, including possession of a dangerous weapon and obstruction of justice. It ultimately sentenced him to 121 months on each count, with the sentences to run concurrently. Defendant appeals his convictions and sentence.

II.

Alvarado alleges that his inculpatory statements of December 5, 2003 should have been suppressed at his trial, because they were taken in violation of his Sixth Amendment right to counsel.* He initially contends that commencement of formal proceedings on his state charges caused the Sixth Amendment right to counsel to attach to his federal charges as well, because the state and federal charges were the "same offense."

We disagree. Since they arise from separate sovereigns, state and federal offenses are not the same for purposes of the Sixth Amendment right to counsel. This case, moreover, highlights the fact that different sovereigns often define and prosecute similar crimes in different ways. For even applying the traditional test to determine whether two conspiracies are the same, the state and federal offenses in this case are distinct.

A.

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. The right attaches only after the commencement of formal charges against a defendant. *See Moran v. Burbine*, 475 U.S. 412, 431 (1986). The right is also "offense specific," and "cannot be invoked once for all future prosecutions." *McNeil v. Wisconsin*, 501 U.S. 171, 175 (1991). Even though an accused has a Sixth Amendment right to counsel for one offense — because formal charges have been brought — the right does not automatically attach to other offenses with which he has not been charged. *See Texas v. Cobb*, 532 U.S. 162, 168 (2001). Instead, the right only includes uncharged offenses that constitute the "same offense" as one an accused has been formally charged with committing. *See id.* at 172-73. In *Cobb*, the Supreme Court applied double jeopardy's "same offense" test, first articulated in *Blockburger v. United States*, 284 U.S. 299, 304 (1932), to determine whether two state offenses were

---

*Defendant has not appealed the district court's conclusion that he was properly read his *Miranda* rights in accordance with the Fifth Amendment.

distinct for purposes of the Sixth Amendment right to counsel. *Id.* at 173. Most importantly, the Court explained that there was "no constitutional difference between the meaning of the term 'offense' in the contexts of double jeopardy and of the right to counsel." *Id.*

A central feature of double jeopardy's definition of offense is the "dual sovereignty doctrine." Applying this doctrine, the Supreme Court has continually held that federal and state crimes are not the same offense, no matter how identical the conduct they proscribe. *See, e.g.*, *Heath v. Alabama*, 474 U.S. 82, 88-89 (1985); *Abbate v. United States*, 359 U.S. 187, 194-96 (1959); *United States v. Lanza*, 260 U.S. 377, 382 (1922); *Moore v. Illinois*, 55 U.S. (14 How.) 13, 19-20 (1852). "[A]n act denounced as a crime by both national and state sovereignties is an offense against the peace and dignity of both and may be punished by each." *Lanza*, 260 U.S. at 382.

Because *Cobb* clearly indicates that the definition of offense is the same in the right to counsel and double jeopardy contexts, 532 U.S. at 173, the dual sovereignty doctrine has equal application in both. Indeed, if dual sovereignty is a central feature of double jeopardy analysis, it cannot help but be a central feature of offense-specificity analysis since the two after *Cobb* are constitutionally one and the same. That *Cobb* meant to adopt the dual sovereignty doctrine as a test for offense specificity is apparent from the Court's description of the right to counsel as "'prosecution specific.'" *Id.* at 173 n.3. Since federal and state prosecutions have continually been treated as separate under double jeopardy analysis, *see Abbate*, 359 U.S. at 194-96, the federal offense would not trigger the right to counsel under a general "prosecution specific" framework.

Any other conclusion would be an affront to both state and federal sovereignty. "As every schoolchild learns, our Constitution establishes a system of dual sovereignty between the States and the Federal Government." *Gregory v. Ashcroft*, 501 U.S. 452, 457 (1991). This fundamental structural precept is deeply-ingrained, and is surely most salient in the realm most central to sovereignty itself, to wit, the ability to protect citizens and punish wrongdoers. "Foremost among the prerogatives of sovereignty is the power to create and enforce a criminal code." *Heath*, 474 U.S. at 93. Because crime is traditionally viewed "as an offense against the sovereignty of the government," *id.*

at 88, "the power of punishment appertains to sovereignty, and may be exercised, whenever the sovereign has a right to act, as incidental to his constitutional powers," *McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 418 (1819).

We therefore cannot conclude that Virginia has functionally charged defendant with a federal crime, or vice versa. Virginia can no more define what constitutes a federal criminal offense than the federal government can promulgate Virginia's criminal law. By virtue of their separate sovereignty, each may separately establish and enforce criminal laws in accordance with the Constitution's commands. To suggest, as defendant does, that state and federal offenses are the same would strip both sovereigns of a central attribute of sovereignty in derogation of our federal design. *See Heath*, 474 U.S. at 93.

Alvarado nonetheless argues that if the dual sovereignty doctrine applies to the Sixth Amendment right to counsel, state and federal governments will manipulate their separate prosecutions to deprive the criminally accused of this right. But a defendant's constitutional guarantees are not furthered by melding together federal and state sovereignty, and throwing overboard our federal system's primary shield against government abuse. *See Gregory*, 501 U.S. at 459 ("In the tension between federal and state power lies the promise of liberty."). Rather, a defendant's rights are safeguarded by properly enforcing them in each respective sovereign's sphere.

Both the state and federal governments, for example, must respect the Sixth Amendment right to counsel once each brings its own formal charges, *see Moran*, 475 U.S. at 431. *See also Michigan v. Jackson*, 475 U.S. 625, 636 (1986). And the Fifth Amendment right to counsel applies broadly to all law enforcement custodial interrogation, state or federal. *See McNeil*, 501 U.S. at 178; *Miranda v. Arizona*, 384 U.S. 436, 478-79 (1966). Indeed, when the defendant in *Cobb* made the similar argument that *Cobb*'s offense-specific rule would "prove 'disastrous' to suspects' constitutional rights," the Court likewise responded that defendants would still retain the right to consult with counsel before law enforcement officers conduct custodial interrogation. *See Cobb*, 532 U.S. at 171-72 & n.2; *see also United States v. Montgomery*, 262 F.3d 233, 247 (4th Cir. 2001) (not-

ing that *Cobb* "calls into question the viability of any 'collusion exception' to the offense-specific rule").

The circumstances before us illustrate that the operation of the Fifth and Sixth Amendment rights to counsel can adequately protect the criminally accused in each sovereign's respective sphere. Defendant was formally charged with state offenses, and Virginia, following the dictates of the Sixth Amendment, provided him counsel. Defendant was later placed in federal custody, and the district court found that Agent Clop properly read him his *Miranda* rights. In fact, Agent Clop testified that Alvarado was eager to speak on December 5, and Clop had to interrupt him in order to provide the required warnings. And while federal and state law enforcement authorities did engage in joint investigation, such collaborative efforts can hardly be dispositive of government misconduct. *See Bartkus v. Illinois*, 359 U.S. 121, 123-24 (1959). The record squarely shows that each sovereign properly accorded defendant the safeguards the Constitution requires in their separate prosecutions.

As the foregoing analysis indicates, we join those circuits that have employed the dual sovereignty doctrine in the Sixth Amendment context. *See United States v. Coker*, 433 F.3d 39, 44-45 (1st Cir. 2005); *United States v. Avants*, 278 F.3d 510, 517 (5th Cir. 2002). And we respectfully disagree with the Second Circuit's decision to the contrary. *See United States v. Mills*, 412 F.3d 325, 330 (2d Cir. 2005); *see also United States v. Krueger*, 415 F.3d 766, 775-78 (7th Cir. 2005) (suggesting the same). Due to the nature of dual sovereignty, the Sixth Amendment right to counsel in the state proceedings did not survive the dismissal of state charges. Since defendant's state and federal offenses were inherently distinct under the dual sovereignty doctrine, they cannot be the same offense for purposes of the Sixth Amendment right to counsel.

## B.

The facts of this case are, moreover, illustrative of the broader principle that sovereigns can and often do define and prosecute similar criminal conduct in divergent ways. Alvarado argues that since both the federal and state charges each included a count of conspiracy to distribute cocaine, the offenses must be the same. But, in fact, the

state and federal governments elected to enforce their criminal laws differently, for they prosecuted defendant on separate conspiracies altogether.

The Double Jeopardy Clause prevents the government from splitting a single conspiracy into multiple offenses, *United States v. Cole*, 293 F.3d 153, 158 (4th Cir. 2002), and we employ a totality of the circumstances test to decide whether two conspiracies are distinct, *see United States v. Mackins*, 315 F.3d 399, 410 (4th Cir. 2003); *Cole*, 293 F.3d at 158; *United States v. Ragins*, 840 F.2d 1184, 1188 (4th Cir. 1988). Five general factors guide this determination:

> (1) the time periods covered by the alleged conspiracies; (2) the places where the conspiracies are alleged to have occurred; (3) the persons charged as coconspirators; (4) the overt acts alleged to have been committed in furtherance of the conspiracies, or any other descriptions of the offenses charged which indicate the nature and scope of the activities being prosecuted; and (5) the substantive statutes alleged to have been violated.

*Cole*, 293 F.3d at 158 (internal quotation marks omitted). The test is a flexible one; some factors may be more important than others depending on the circumstances of the case. *United States v. MacDougall*, 790 F.2d 1135, 1144 (4th Cir. 1986). We see no reason why this test should not also apply to the Sixth Amendment right to counsel, and make use of it here. *See Cobb*, 532 U.S. at 173 (no constitutional difference between meaning of "offense" in double jeopardy and right to counsel contexts).

Applying these factors, it is evident that the federal government was charging defendant with a much more extended and pervasive drug conspiracy than was the Commonwealth. In the first place, "the time periods covered by the alleged conspiracies," *Cole*, 293 F.3d at 158, were not the same. The federal indictment charged defendant with conspiring to distribute cocaine from August to October 2003, whereas the Commonwealth's arrest warrants only identified the relevant conduct as occurring on or about October 2, 2003, the night of the events at the Days Inn. Moreover, the affidavit in support of the federal criminal complaint suggested defendant had been involved in

drug distribution since January 2003. Nowhere in the record does the Commonwealth make such an assertion.

The charges in the federal indictment and the evidence introduced at defendant's federal trial also described a conspiracy broader in scope than the one alleged in the state charge. *See Cole*, 293 F.3d at 158. The federal indictment charged defendant and his coconspirators with taking numerous trips to North Carolina to obtain cocaine. And evidence adduced at trial indicated that defendant's drug distribution did not simply occur out of the Days Inn Hotel, as he had previously helped deliver cocaine to a customer in a different location. The Commonwealth's arrest warrants, by contrast, encompassed only distinct events on or about a single day.

Finally, the federal indictment charged defendant with conspiracy to distribute 500 grams of cocaine, whereas the Commonwealth did not designate a drug amount. The drug quantity was a substantive element of the federal crime. *See United States v. Promise*, 255 F.3d 150, 156-57 (4th Cir. 2001) (en banc) (interpreting 21 U.S.C. § 841). These differences provide ample support for the conclusion that the conspiracies were not the same offense.

One of the chief virtues of our system of dual sovereignty is that each sovereign can approach problems in divergent ways. Though sovereigns can criminalize similar conduct, they might have distinct objectives and resource constraints in doing so. Here, Virginia and the federal government, as separate sovereigns, have operated differently from one another in defining and prosecuting their separate conspiracy statutes. That the Commonwealth was charging defendant with conspiracy to distribute a finite amount of drugs on one day should not stop the federal government from prosecuting a more widespread conspiracy to distribute a greater amount of drugs over a several-month period.

### III.

Alvarado also contends that, even if his state and federal offenses are distinct, his Sixth Amendment right to counsel still attached to his federal offenses, because law enforcement officers had filed a federal criminal complaint prior to his December 5 interrogation. We dis-

agree with defendant's contention because it misunderstands the essential nature of the Sixth Amendment right.

By its own terms, the Sixth Amendment applies to "criminal *prosecutions*" as opposed to criminal *investigations*. U.S. Const. amend. VI (emphasis added). The Supreme Court has thus repeatedly held that the Sixth Amendment right to counsel "attaches only at or after the initiation of adversary judicial proceedings against the defendant." *United States v. Gouveia*, 467 U.S. 180, 187 (1984); *see also Fellers v. United States*, 540 U.S. 519, 523 (2004) (same); *McNeil*, 501 U.S. at 175 (same). This is for good reason. It is only at this point that the criminal "process shifts from investigation to prosecution," *United States v. D'Anjou*, 16 F.3d 604, 608 (4th Cir. 1994), and only at this time that the accused confronts "the prosecutorial forces of organized society," *Moran*, 475 U.S. at 430 (internal quotation marks omitted).

The filing of a federal criminal complaint does not commence a formal prosecution. Rather, the main reason a law enforcement officer files such a complaint is to establish probable cause for an arrest warrant. *See* Fed. R. Crim. P. 3, 4(a); *United States v. Moore*, 122 F.3d 1154, 1156 (8th Cir. 1997). The criminal process is still in the investigative stage, and "the adverse positions of government and defendant" have yet to solidify. *Gouveia*, 467 U.S. at 189 (internal quotation marks omitted). The filing of the federal complaint, therefore, can no more be characterized as "the initiation of adversary judicial proceedings against the defendant," *id.* at 187, than can the filing of an affidavit in support of a search warrant.

This conclusion is buttressed by our previous holding that the right to counsel does not attach immediately after arrest and prior to arraignment. *See D'Anjou*, 16 F.3d at 608 (citing *Moran*, 475 U.S. at 430); *see also Gouveia*, 467 U.S. at 190 ("[W]e have never held that the right to counsel attaches at the time of arrest."); *United States v. Hylton*, 349 F.3d 781, 787 (4th Cir. 2003) (filing Maryland statement of charges did not prompt Sixth Amendment right to counsel). If an arrest does not initiate the Sixth Amendment right to counsel, the federal criminal complaint — whose main purpose is to establish probable cause for the arrest — logically should not either. *See Moore*, 122 F.3d at 1156. Any other rule would provide less protection to those

arrested without warrants, "discouraging the use of warrants in making arrests for federal crimes." *Id.*

It will come as no surprise, therefore, that our sister circuits have also held that the filing of a federal criminal complaint does not give rise to any Sixth Amendment right. *See, e.g.*, *Beck v. Bowersox*, 362 F.3d 1095, 1101-02 & n.4 (8th Cir. 2004); *United States v. Langley*, 848 F.2d 152, 153 (11th Cir. 1988) (per curiam); *United States v. Pace*, 833 F.2d 1307, 1312 (9th Cir. 1987); *United States v. Duvall*, 537 F.2d 15, 22 (2d Cir. 1976). Since the federal criminal complaint did not give rise to defendant's Sixth Amendment right to counsel, the incriminating statements he made on December 5 were admissible at his federal trial.

IV.

Lastly, defendant contends that the district court enhanced his sentence in violation of *United States v. Booker*, 125 S. Ct. 738, 755-56 (2005). Defendant objected to his sentence at his sentencing, and preserved his argument here. The government concedes that there is *Booker* error, and we agree. The district court enhanced defendant's sentence based on facts the defendant did not admit and the jury did not find. For example, it added two points to defendant's offense level for possession of a firearm and another two points for obstruction of justice. *See* U.S.S.G. §§ 2D1.1(b)(1), 3C1.1 (2003). These enhancements increased defendant's sentence beyond what he could have received under the Guidelines based on the jury factual findings alone, and were in violation of *Booker. See, e.g.*, *United States v. Hughes*, 401 F.3d 540, 547 (4th Cir. 2005). Consequently, we must vacate defendant's sentence and remand to the district court for resentencing in accordance with the procedures set forth in *Hughes*, 401 F.3d at 546-47, and *United States v. Green*, No. 05-4270, slip op. at 6-8 (4th Cir. Feb. 6, 2006).

V.

For the foregoing reasons, we affirm defendant's convictions, but vacate his sentence and remand to the district court for resentencing.

*AFFIRMED IN PART;*
*VACATED AND REMANDED IN PART*