In the

# United States Court of Appeals

## For the Seventh Circuit

No. 14-1901

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JACKIE H. RICHARDSON,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:13-cr-00070-TWP-DKL-1 — **Tanya Walton Pratt**, *Judge.*

ARGUED JANUARY 27, 2015 — DECIDED MARCH 12, 2015

Before POSNER, SYKES, and HAMILTON, *Circuit Judges.*

POSNER, *Circuit Judge.* The Sixth Amendment to the Con-
stitution provides that "in all criminal prosecutions, the ac-
cused shall enjoy the right to a speedy … trial." The brevity
of the provision is striking. There is no quantification of
"speedy" and no specification of when in the course of a
criminal investigation or prosecution the speedy-trial clock
begins to tick. But the Supreme Court has held that it does
not begin to tick "before a defendant is indicted, arrested, or

otherwise officially accused." *United States v. MacDonald*, 456 U.S. 1, 6 (1982). To the same effect see *United States v. Marion*, 404 U.S. 307, 313 (1971), and *United States v. Loud Hawk*, 474 U.S. 302, 310 (1986). The question presented by this appeal is whether or in what circumstances the clock begins to tick when a federal complaint and detainer are served on a person who is being prosecuted by a state.

In *United States v. Zukowski*, 851 F.2d 174, 178 (7th Cir. 1988), we interpreted *MacDonald* to hold that the "official accusation" to which the Supreme Court referred in that case must be a formal charging document, such as an indictment or information. We'll see that a complaint, affidavit of probable cause, and detainer (the documents at issue in this case), even in combination, are not the equivalent of an indictment or information.

"Someone who is only the target of a criminal investigation has no right to have the government wrap up its investigation quickly and bring charges, even if the target is aware of the investigation." *United States v. Clark*, 754 F.3d 401, 405 (7th Cir. 2014); see also, e.g., *Pharm v. Hatcher*, 984 F.2d 783, 785 (7th Cir. 1993). "[E]ven an arrest by the federal authorities is insufficient if the person is immediately released without any federal charges being filed." *United States v. Clark, supra*, 754 F.3d at 405. (*Clark* was a Speedy Trial Act case, but we noted in it that "the Sixth Amendment speedy trial right, from which the Speedy Trial Act draws its substance, applies only to persons who are formally accused of a crime." *Id*.) Only if an arrested person is detained pending indictment does the speedy-trial clock begin to tick upon arrest. See, e.g., *United States v. Loud Hawk, supra*, 474 U.S. at 310 ("when no indictment is outstanding, only the '*actual* re-

straints imposed by arrest and holding to answer a criminal charge ... engage the particular protections of the speedy trial provision of the Sixth Amendment,'" quoting *United States v. Marion*, *supra*, 404 U.S. at 320); *Dillingham v. United States*, 423 U.S. 64, 65 (1975) (per curiam).

Richardson was arrested by Indiana police on December 17, 2011, for committing a vicious domestic battery and intimidation with a deadly weapon, in violation of Indiana law. A search of his home, conducted the same day, revealed a remarkable collection of guns and ammunition—apparently he manufactured guns (from the gun parts) and also ammunition. Because he previously had been convicted in federal court of illegal possession of a firearm by a felon, his gun-related activities violated federal as well as state law. So just four days after his arrest the U.S. Attorney filed a criminal complaint and affidavit of probable cause in a federal court in Indiana, and a federal detainer in the jail in which Richardson was being held on the state charges.

Such a complaint must not be confused with a civil complaint. A civil complaint initiates a civil suit. Fed. R. Civ. P. 3. A criminal complaint can initiate only a misdemeanor prosecution. Fed. R. Crim. P. 58(b). A complaint that charges a felony can establish a basis for an arrest warrant, justify an arrest made without a warrant, initiate, continue, or expand an investigation, and notify other law enforcement agencies of its concern with the person arrested or investigated. Fed. R. Crim. P. 3, 4(a), 5(b); *United States v. Alvarado*, 440 F.3d 191, 200 (4th Cir. 2006). But unlike an indictment or information, it cannot initiate a felony prosecution. An indictment or information must be signed by a government lawyer; a complaint, because it cannot initiate a felony prosecution, need

not be, Fed. R. Crim. P. 3, 7(c)(1), and was not in this case. And even a complaint plus a detainer imposes no deprivation of liberty on the defendant.

All that the complaint in this case said is that the agent of the Federal Bureau of Alcohol, Tobacco, Firearms and Explosives who signed it was swearing that "to the best of [her] knowledge and belief," on a specified date the "defendant did unlawfully possess a firearm as a convicted felon" and was thus "in violation of" of the federal criminal code. See 18 U.S.C. § 922(g)(1). This signals an investigation rather than a prosecution.

No more does an affidavit (filed with the complaint in this case) in support of a search warrant kick off a prosecution. *United States v. Alvarado*, *supra*, 440 F.3d at 200. As for a detainer, it merely informs the jail that a person held there is wanted on other criminal charges and the jail should therefore notify the agency that issued the detainer of the prisoner's imminent release, so that the agency can arrest him. The federal court issued a warrant for Richardson's arrest, but of course the warrant wasn't executed, because he was already in jail. The state court set his bail at $500,000. He couldn't make bail, and so remained in jail throughout the state proceedings against him.

On March 21, 2013, approximately fifteen months after his arrest, Richardson pleaded guilty in state court to felony intimidation and was sentenced to time served. He would thus have been a free man had it not been for the federal detainer. The day after he was sentenced the federal warrant for his arrest that had been issued immediately after his state arrest was executed, and he was jailed. The following month he was indicted on federal charges of being a felon in pos-

session of firearms and also for illegal possession of a sub-machine gun (35 of the items found on his property were either submachine guns or parts of such guns).

Initially he was disposed to plead guilty to the federal charges, but he changed his mind and on January 28, 2014, filed a motion to dismiss the federal case on the ground that the government had violated his Sixth Amendment right to a speedy trial. He argued that the speedy-trial clock had started to tick when the federal complaint and detainer had been filed four days after his arrest on state charges. Between then and the issuance of his federal indictment 16 months had elapsed, which would indeed have been a considerable delay, raising a colorable speedy-trial issue, had the federal prosecution begun back in December 2011 when the gun cache was discovered. The government argues that the clock did not begin to tick until the federal warrant for Richardson's arrest was executed in March 2013 upon the completion of his state sentence.

His federal trial was scheduled for June 2013 and would thus have been "speedy" relative to the federal indictment had the trial not been delayed—but the delay was at the behest of Richardson, who that month said he would plead guilty and therefore asked for a continuance of the trial. Not until January of the following year did he repudiate his agreement to plead guilty, and move to dismiss the indictment on speedy-trial grounds. The district judge denied the motion. Richardson then pleaded guilty and was sentenced to 120 months in prison. His appeal is from the denial of his motion to dismiss the indictment. If it should have been granted, his conviction and sentence must be reversed.

He argues that he was "officially accused" of a federal crime when the federal government filed its complaint and detainer the day after his arrest by state officers. Now the Supreme Court in *MacDonald* did not actually say that the speedy-trial clock begins to tick when there is an official accusation of a federal crime—rather that it doesn't begin to tick *before* then; the official accusation is the *earliest* time at which it begins to tick. But subsequent cases, while continuing to cite *MacDonald* approvingly, regard "arrest [provided the person arrested isn't immediately released], indictment, or other official accusation" as a trigger rather than merely as an analytical starting point. See, e.g., *Doggett v. United States*, 505 U.S. 647 (1992); *United States v. Loera*, 565 F.3d 406, 412 (7th Cir. 2009); *Pharm v. Hatcher*, *supra*, 984 F.2d at 785. That evolution of the law can't help Richardson, however. The relevant arrest (that is, one followed by detention) must be for a suspected federal crime, and there was no federal arrest when he was arrested on state charges, even though the feds were in the vicinity, so to speak, having accompanied state officers on the search of his premises. See *United States v. Clark*, *supra*, 754 F.3d at 405.

The distinction is important. To hold that the clock began to run upon the commencement of the state proceeding against Richardson, on the theory that he was in effect officially accused of a federal as well as a state crime, would produce a messy clash of governments (Indiana's state government and the federal government) with no likely benefit to the defendant. The state had arrested him primarily for domestic battery, a state not federal offense. The purpose of filing the federal complaint and detainer was just to make sure that he wasn't released before the feds were able to ar-

rest him and book him for violation of federal gun laws, if they decided to prosecute him.

Had the speedy-trial clock begun to run upon the filing of the complaint and detainer, the U.S. Attorney would have been under pressure to indict Richardson forthwith and proceed with all deliberate speed to trial—with the result that Richardson would have been fighting prosecution by two sovereign entities, the State of Indiana and the United States of America, at the same time. If the state decided to take a pass, it would be throwing away its domestic-battery charge, which had no counterpart in the federal case. If the feds took a pass, they would be throwing away gun charges more extensive than those involved in the state prosecution. And had the state and federal prosecutions proceeded simultaneously, Richardson might squawk at having to defend himself in two trials at the same time, while if one trial were delayed he would complain of a speedy-trial violation.

We can't think of a good reason for the Justice Department to have barged into the state's proceeding by instituting an overlapping federal prosecution. When a person is credibly accused of violating both federal and state law, he exposes himself to prosecution by both federal and state authorities—and thus to two separate proceedings, which rarely can efficiently be conducted simultaneously. As noted in *United States v. Schreane*, 331 F.3d 548, 554–55 (6th Cir. 2003) (for clarity, we omit citations and internal quotation marks and rearrange some sentences), when state and federal charges are lodged against a defendant "at least one sovereign … will have to wait its turn at the prosecutorial turnstile. [For delay that is] due to the obvious need to allow the defendant to be prosecuted by the State without interference

by the federal government" is unavoidable. "Customarily—although certainly not always—the jurisdiction with custody of the accused ... is afforded the first opportunity to prosecute the defendant. This longstanding practice is rooted in the respect accorded to a custodial sovereign to resolve its criminal proceedings before relinquishing custody to another jurisdiction. This practice also can be understood in terms of the orderly and efficient prosecution of cases in our dual system of criminal justice. … [S]imply waiting for another sovereign to finish prosecuting a defendant is without question a valid reason for delay that weighs in favor of the government."

The custodial sovereign in this case was the State of Indiana. It had "first dibs" (the right to go first), therefore, on prosecuting Richardson. It would be unrealistic to think that if the accused is in custody, only minimal paperwork is needed to shift custody as needed between the two governments from time to time. That would turn the criminal process into a game of shuttlecock. See *United States v. Watford*, 468 F.3d 891, 900–03 (6th Cir. 2006); *United States v. Grimmond*, 137 F.3d 823, 827–29 (4th Cir. 1998). The sequencing of prosecutions and the resulting delay, often long, of one of them, are the inevitable consequence of a governmental structure that gives separate governments overlapping jurisdictions.

Richardson points out that there was "cooperation" between state and federal officers from the outset. When his girlfriend complained to the police about his beating her up, she mentioned his collection of guns, and so the police informed the ATF, whose agents joined the police in searching Richardson's property and seizing the guns, gun parts, and

ammo found there. But the feds had no interest in or for that matter jurisdiction over the domestic battery and so let the state proceed first. Had the state been the feds' cat's paw, charging Richardson with the battery offense solely in order to detain him pending an eventual federal indictment, the state prosecution would have been a de facto federal prosecution and the speedy-trial clock would have started to run when Richardson was charged by the state. See, e.g., *United States v. Dyer*, 325 F.3d 464, 468 (3d Cir. 2003). But that isn't what happened. See *United States v. Clark*, *supra*, 754 F.3d at 405–06.

Even if, contrary to what we've said, the speedy-trial clock began to tick with respect to the federal prosecution when the federal complaint, affidavit of probable cause, and detainer were filed, there would still be no violation of the Sixth Amendment. Like most constitutional rights, the right to a speedy trial is not absolute; it yields in the face of compelling circumstances. The most obvious such case is where the defendant prevents a speedy trial from being held because he has fled, or refused to enter, the jurisdiction in which the trial would be held, as in *In re Kashamu*, 769 F.3d 490, 493–94 (7th Cir. 2014). One step down, but deemed important in *Barker v. Wingo*, 407 U.S. 514, 532 (1972), is a defendant's "failure to assert the right [to a speedy trial]," which the Court said "will make it difficult for a defendant to prove that he was denied a speedy trial." There were reasons for delay in this case, and none for attempting to try the defendant in federal court while he was defending himself in state court, or insisting that he be tried first in federal court and only after a judgment was entered by that court tried in state court.

It's not as if delay always favors the prosecutor, and so always supports a speedy-trial claim. Many defendants are content or even prefer to sit around and wait for witnesses to die or vanish or forget. For if the defendant is guilty there are likely to be more witnesses helpful to the government's case than to the defendant's. And the government will usually need more witnesses than the defendant because the government must prove guilt beyond a reasonable doubt, and the defendant has no burden of proof whatsoever. And so on average the death, disappearance, forgetfulness, or recantation of a witness will favor the defendant and thus put him on the slow side of the case.

Richardson relies heavily on *Smith v. Hooey*, 393 U.S. 374 (1969), which preceded the *MacDonald* and *Marion* decisions. The defendant was in federal prison on federal charges. A state had filed formal charges against him and he wanted a trial on those charges. The state refused. It said he'd have to wait till the completion of his federal prison sentence. The state gave no reason for not complying with his request for a speedy trial other than that it was its policy not to try someone who was in prison on other charges. The Supreme Court, which had already held that the Sixth Amendment's speedy-trial right would be deemed to have been made applicable to state prosecutions by the Fourteenth Amendment, *Klopfer v. North Carolina*, 386 U.S. 213, 223–26 (1967), didn't think the state's reason adequate.

But not only did Richardson not ask for a federal trial during his state confinement; he had not yet been convicted and sentenced by the state court. He was still awaiting trial, so that had he been placed on trial for his federal offenses the proceedings would have overlapped, a result likely to

sow confusion. See *United States v. Watford, supra*, 468 F.3d at 902–03; *United States v. Grimmond, supra*, 137 F.3d at 828–29.

All this said, we acknowledge that the extreme vagueness of the speedy-trial clause of the Sixth Amendment, and the limited clarification of it that has been attempted by the Supreme Court, open up a potential for prejudice to a defendant caught between two sovereigns. Suppose Indiana had dawdled in prosecuting Richardson and as a result not 16 months but 3 years had elapsed between the filing of the federal complaint, affidavit, and detainer and the federal indictment. A delay of such length might have seriously prejudiced Richardson's defense. The best solution in such a case might be, as suggested in *Pharm v. Hatcher, supra*, 984 F.2d at 786–87, to inquire whether the prejudice was so great, and not excused by any legitimate need of the government to complete a thorough investigation before indicting, that the delay had denied the defendant due process of law. See also *United States v. Lovasco*, 431 U.S. 783, 796–97 (1977); *United States v. Zukowski, supra*, 851 F.2d at 178; *United States v. Samples*, 713 F.2d 298, 302 (7th Cir. 1983); *United States v. Sanders*, 452 F.3d 572, 581–83 (6th Cir. 2006). Richardson argues that he was hurt by the 16-month delay—that had it not been for the federal detainer the state court would have fixed his bail at an amount he could have paid. But had he made bail the feds would have arrested him and, given the magnitude of his illegal firearm business, the federal court would either have denied bail or set it at a level, comparable to that set by the state court for its narrower set of charges, that he could not afford. And finally there is no indication that the government's delay in indicting him was intended to impede his defense.

The district judge was right to deny the motion to dismiss the federal prosecution.

AFFIRMED.

HAMILTON, *Circuit Judge*, concurring in the judgment. I agree with my colleagues that defendant Jackie Richardson's speedy trial right under the Sixth Amendment was not violated here. I would follow a much narrower path to that conclusion, however, to stay more consistent with Supreme Court precedent and to preserve the ability to deter or prevent unduly prejudicial delay in future cases.

The majority affirms the district court's judgment on two grounds: (1) the combination of a federal complaint, arrest warrant, and detainer does not trigger speedy trial concerns because it does not add up to an "official accusation" within the meaning of *United States v. MacDonald*, 456 U.S. 1, 6 (1982), and in the alternative, (2) Richardson has not shown a violation of his right to a speedy trial. I agree with my colleagues on the second ground but not the first.

Start with our agreement. Richardson has preserved his Sixth Amendment objection only as to the sixteen months between the filing of the federal complaint and detainer on December 20, 2011 and his federal indictment on April 10, 2013. (He has not invoked the more detailed statutory protections of the Speedy Trial Act, 18 U.S.C. § 3161 *et seq.*, which would not help him here.) To weigh whether Richardson's Sixth Amendment right was violated by that sixteen-month delay, we should apply the factors set forth in *Barker v. Wingo*, 407 U.S. 514, 530 (1972). See *Doggett v. United States*, 505 U.S. 647, 655–56 (1992) (applying *Barker* factors). The factors are the length of the delay, the reasons for the delay, whether the defendant asserted his right to a speedy trial, and any prejudice the defendant suffered by the delay.

These factors show that Richardson's Sixth Amendment right to a speedy trial was not violated. The first factor, the

sixteen-month delay, is sufficient to justify concern and further analysis, as the majority recognizes. *United States v. Arceo*, 535 F.3d 679, 684 (7th Cir. 2008) (a delay approaching one year is presumptively prejudicial); *United States v. Oriedo*, 498 F.3d 593, 597 (7th Cir. 2007) (same).

The second and third *Barker* factors, which are closely related here, weigh heavily against Richardson. The reasons for the delay are best seen as shared between the government and the defendant. The federal government chose to defer to the state prosecution. That was certainly a reasonable decision. It was also a decision that Richardson did nothing to challenge until after the state prosecution was complete, after the federal prosecution was well under way, and after the challenged delay had already passed. In such a situation, where the defendant faces both federal and state prosecutions in sequence, if the defendant indicates no desire to force the deferred prosecution forward, there should be no Sixth Amendment violation.

In other cases, however, a defendant in this situation—target of a federal complaint and detainer while in state custody—should be entitled to require the federal prosecutors to "put up or shut up." Given the fruits of the search of Richardson's property, the federal prosecutors no doubt could have "put up" quite readily, but that will not always be the case.

The fourth *Barker* factor is whether the delay prejudiced the defendant. Richardson has not shown prejudice from the delay in this case. For purposes of the Sixth Amendment speedy trial right, prejudice can take many forms, of course, including loss of liberty, disruption of employment and association with other people, financial drains, and continuing

harm to reputation. *Oriedo*, 498 F.3d at 600–01, citing *United States v. Marion*, 404 U.S. 307, 320 (1971), and *Barker*, 407 U.S. at 532–33. But Richardson's claim falls short on this score. During the relevant time, he was in state pretrial custody and was busy defending the state criminal charges. He has not identified loss of exculpatory evidence or other obvious forms of prejudice.

He argues on appeal that the federal detainer caused the state court to set his bail so high ($500,000) that he could not afford to post bond, so that the federal detainer caused him to be stuck in jail pending the resolution of his state charges. That is possible, but on this record, we would have to speculate about the role the federal detainer played, if any, in the state court's initial bail decision. Richardson was accused in state court of a violent attack on his girlfriend. He also had in his home an extraordinary arsenal of illegal firearms and ammunition, as well as equipment to manufacture firearms. Perhaps the state court viewed him as dangerous enough to set an impossible bail amount regardless of the federal accusation. Perhaps the federal detainer tipped the balance in the state court's bail decision. Richardson does not seem to have challenged the state court's bail decision, and we cannot set aside his federal conviction based on speculation about the role the federal detainer might have played.[1]

---

[1] The majority speculates at page 11 that if Richardson had made bail in the state court, a federal court would either have denied bail or set bail deliberately at a level he could not afford. In fact, in the Southern District of Indiana, pretrial release and detention decisions under 18 U.S.C. § 3142 are based on estimates of the defendant's risk of flight and danger to the community. Pretrial release in that district is almost never conditioned on the defendant's ability to post any bail amount at all.

Richardson also argues that the delay in the federal prosecution caused him prejudice by making the prior state conviction part of his criminal history, raising the sentencing guideline range for his federal convictions. That should not count as a relevant form of prejudice. If the federal prosecution had gone forward first, then his federal convictions would have been relevant criminal history for the state courts. The Sixth Amendment right to a speedy trial does not give a defendant a constitutional right to the more advantageous sequence in those sentencing decisions.

Under this reasoning, then, Richardson's Sixth Amendment speedy trial right was not violated, and on this basis, I agree we should affirm his conviction. I disagree, however, with the majority's more sweeping pronouncement—which is not necessary to resolve this case—that the combination of a federal complaint, arrest warrant, and detainer can *never* trigger speedy trial concerns.

That pronouncement is based on too narrow a reading of Supreme Court decisions in this area. The majority's reasoning also fails to appreciate the risk of prejudice, especially to an innocent defendant, and exaggerates the speedy trial doctrinal problems and logistical difficulties of managing parallel state and federal prosecutions.

First, the Supreme Court decisions. The majority's reasoning conflicts with *Smith v. Hooey*, 393 U.S. 374 (1969). Smith was in federal prison but faced criminal charges in state court. He wanted to be brought to trial on the state charges and sought for six years to get a prompt trial. The state refused because he was already in prison serving another sentence. After the state court refused to dismiss the charges, the Supreme Court reversed and held that the state

was required at least to make a good faith effort to try Smith by asking the federal government to transfer his custody for a state trial.

*Smith* pointed out that the purposes of the speedy trial guarantee can apply even to a person being held in custody by another sovereign. Undue delay may cause the person to lose forever the possibility of at least partially concurrent sentences; the conditions of his current custody may be harsher than otherwise; the threat of another pending charge may be as oppressive as for a person who remains free; and long delays can impair a person's ability to defend against the pending charge. *Smith*, 393 U.S. at 378–79. The *Smith* Court did not suggest that its reasoning depended on whether the defendant was in federal custody or state custody, or whether the second, pending case was in federal or state court. Its reasoning should apply here, where the federal and state roles are reversed.

The majority points out correctly that Smith pushed for a speedy state trial, while Richardson made no such effort here. In my view, that's the decisive difference between the cases, and it's why I concur in the judgment here. The speedy trial issue, however, is better addressed under the *Barker* framework. The majority's rigid conclusion that the speedy trial right does not apply at all here conflicts with the reasoning of *Smith*.

In fact, in the wake of *Smith v. Hooey*, the Supreme Court has applied a standard that is more pragmatic and flexible than the majority's approach. The constitutional right attaches when a defendant is "indicted, arrested, or *otherwise officially accused*." *United States v. MacDonald*, 456 U.S. 1, 6 (1982)

(emphasis added), citing *United States v. Marion*, 404 U.S. 307, 313 (1971); see also *Doggett*, 505 U.S. at 655.

My colleagues contend that a complaint does not "officially accuse" a person of a crime within the meaning of *MacDonald*, *Marion*, and *Doggett*. The complaint itself shows that is about as official an accusation as can be imagined that is not an indictment or information. (The Supreme Court opinions refer to other official accusations as a category distinct from an indictment or federal arrest that were also mentioned.) A complaint asserts, under oath, that there is probable cause to believe a particular person committed a particular crime. It is "a written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 3. The majority points out that a complaint need not be signed by a prosecutor, but how is such a specific accusation signed under oath by a federal law enforcement officer any less an "official accusation" within the meaning of *Doggett*, *MacDonald*, or *Marion*? It is not an indictment or information, but it is surely an "official accusation." A complaint, especially when followed by an arrest warrant and detainer, is not merely a sign of a pending investigation, as my colleagues contend. It makes a quite specific, quite official accusation of a federal crime.

At least three other circuits agree with the approach I would adopt. In a case indistinguishable from this one, *United States v. Thomas*, 55 F.3d 144 (4th Cir. 1995), the Fourth Circuit held that the "combination of the criminal complaint, the arrest warrant, and the federal detainer were sufficient to implicate the speedy trial provision of the Sixth Amendment." *Id.* at 149, citing *Dickey v. Florida*, 398 U.S. 30 (1970), and *Smith*, 393 U.S. at 377–83. Having determined that the

speedy trial right attached, the *Thomas* court then applied the *Barker* factors and found no violation, largely for the same reasons Richardson's claim fails here: the defendant did not push for a speedy federal trial, and federal prosecutors reasonably delayed the federal prosecution so that the state prosecution could run its course without interference. *Id.* at 149–51. That's the better approach here.

Taking an even broader approach, the Ninth Circuit held in *United States v. Terrack*, 515 F.2d 558, 559 (9th Cir. 1975), that a complaint was a sufficiently official "accusation" to trigger the defendant's Sixth Amendment speedy trial right under the reasoning of *Marion*. The Ninth Circuit then applied the *Barker* factors to find no violation where the post-complaint, pre-indictment delays had been caused first by the defendant's evasion of capture and then by mutual consent during negotiations between the defendant and the government. *Id.* The Ninth Circuit has applied similar reasoning in *Northern v. United States*, 455 F.2d 427, 429 (9th Cir. 1972) (filing of federal complaint against defendant in state custody triggered Sixth Amendment speedy trial right, but defendant's own efforts to block removal from state custody defeated his claim).[2]

In another similar case, the First Circuit, in *United States v. Henson*, 945 F.2d 430, 437 (1st Cir. 1991), assumed without explanation that the issuance of a federal complaint, arrest warrant, and detainer for a person in state custody was suf-

---

[2] There are, however, other Ninth Circuit cases taking a narrower approach. See *Arnold v. McCarthy*, 566 F.2d 1377, 1382 (9th Cir. 1978) (speedy trial right engaged by arrest and arraignment, not by earlier complaint); *Favors v. Eyman*, 466 F.2d 1325, 1327–28 (9th Cir. 1972) (same, even though defendant was in state custody on unrelated charge).

ficient to trigger the Sixth Amendment speedy trial inquiry, though again the *Barker* factors were applied to find no violation in that case. *Id.* at 437–39.

As explained above, I think the Supreme Court's cases amply support the approach I have described. But I acknowledge that after *Smith*, in cases presenting Speedy Trial Clause issues different from the issue here, some of the Supreme Court's language, including "official accusation," leaves room for debate about its application to this case. See, e.g., the majority and dissenting opinions in *United States v. Loud Hawk*, 474 U.S. 302 (1986) (holding that period after dismissal of indictment, during which defendant was not under indictment, incarcerated, or subject to substantial restrictions on liberty, did not count toward Speedy Trial Clause claim).[3]

Given this room for argument about the Supreme Court's guidance, we should consider the problem more broadly to serve the purposes of the Speedy Trial Clause and to adopt a workable rule. The majority offers a pragmatic rationale for its broad rule. It is concerned that recognizing a speedy trial right under these circumstances would produce "a messy

---

[3] At page 6, the majority relies on *United States v. Clark*, 754 F.3d 401, 405 (7th Cir. 2014), to say that a federal indictment, federal information, or federal arrest is necessary to trigger speedy trial concerns. That is correct under the plain text of the Speedy Trial Act, see 18 U.S.C. § 3161(b) & (c), but that is all that *Clark* decided. See 754 F.3d at 405–07. *Clark* did not address the Sixth Amendment at all, so its analysis cannot help the majority on this point. Despite their common purposes, the constitutional and statutory standards differ as to important details, and we have recognized that either provision may be violated without violating the other. E.g., *United States v. Loera*, 565 F.3d 406, 412 (7th Cir. 2009).

clash" between the state and federal governments "with no likely benefit to the defendant." These concerns are real but do not justify the sweeping rule adopted by the majority. They are better managed under the framework of the *Barker* factors.

Consider the possible benefit to the defendant. Surely an innocent defendant faces the greatest risk of prejudice by delay. Evidence of his innocence may disappear or erode as memories fade, records are lost, or witnesses move away. The majority recognizes the inverse proposition: "*For if the defendant is guilty* there are likely to be more witnesses helpful to the government's case than to the defendant's. … And so on average the death, disappearance, forgetfulness, or recantation of a witness will favor the defendant and thus put him on the slow side of the case." Slip op. at 10 (emphasis added). That's probably right, but if the accused is innocent, the effects of delay are likely to be exactly the opposite, undermining the ability of the accused to defend himself. Protecting innocent defendants from such unfairness is a core purpose of the Sixth Amendment speedy trial right. E.g., *United States v. Ewell*, 383 U.S. 116, 120 (1966).

The majority's concern about a "messy clash" of governments is legitimate but exaggerated. It does not justify the majority's broad rule. Concerns about bureaucratic friction certainly should not trump the right of the accused (who is presumed innocent) to push for prompt resolution of the charge or other official accusation against him. Where a defendant faces both state and federal charges, state and federal prosecutors already must confer and agree on how to proceed. That happens all the time; they typically know each other well.

If a defendant insists, as I think he should be able to after official accusations by each government, on speedy trials in both cases, the coordination of scheduling is no more difficult a task than state and federal courts accomplish routinely. That happens when there are cases involving the same party, the same witness, or even the same lawyer. And if the accused is in custody, only minimal paperwork is needed to shift custody as needed between the two governments from time to time.

To support its concerns about the "messy clash" between state and federal prosecutions, the majority draws heavily from the Sixth Circuit's opinion in *United States v. Schreane*, 331 F.3d 548, 554–56 (6th Cir. 2003), but *Schreane* actually supports the approach I would adopt. In *Schreane* the Sixth Amendment speedy trial right had been triggered by the defendant's federal indictment. His federal prosecution was put on hold while a state prosecution went forward to conviction and sentencing. The Sixth Circuit discussed the reasons for the delay, which were obviously legitimate, *but it did so in the context of applying the Barker factors that I argue should be applied here*. The same is true of the majority's other cases, *United States v. Watford*, 468 F.3d 891, 900–03 (6th Cir. 2006), and *United States v. Grimmond*, 137 F.3d 823, 827–29 (4th Cir. 1998).

In *Schreane* the Sixth Circuit did not suggest, much less hold, that the speedy trial right should *never* attach because of concerns about possible federal-state interference. In *Schreane* the defendant made no effort to push for an earlier federal trial while his state case was pending, 331 F.3d at 557,

so under the approach I advocate, a defendant like Schreane would also lose.[4]

If, on the other hand, a defendant insists on speedy trials in both state and federal cases, and if there is actually a good reason for one prosecution to wait for the other to finish in the particular case, the *Barker* framework will accommodate this concern, as in *Schreane* and *Thomas*. See *United States v. Thomas*, 55 F.3d at 150–51 (federal prosecutors reasonably delayed the federal prosecution to decrease safety risks and administrative costs, which favored finding no violation of defendant's constitutional speedy trial right under *Barker* reason-for-delay factor).

The majority virtually concedes the risk posed by its approach, acknowledging the "potential for prejudice to a defendant caught between two sovereigns," and describing a scenario where three years lapse between the filing of a federal complaint, affidavit of probable cause, and detainer and the federal indictment. The majority also recognizes that this situation might seriously prejudice the defense. Under its approach, though, the speedy trial guarantee would not offer any protection at all to a defendant caught in this snare. The majority suggests a potential solution: the defendant could bring a due process challenge instead.

---

[4] One odd feature of *Schreane* was that the defendant apparently did not learn of his federal indictment until after he had been sentenced in state court and moved to a state prison. 331 F.3d at 557. If he had known earlier and had still failed to seek a speedy federal trial, the Sixth Circuit said that the third *Barker* factor would "weigh heavily against him." *Id*. That is Richardson's situation, as I view this case.

But why force a square peg into a round hole? After an "official accusation," the speedy trial right should apply. The speedy trial cases and the *Barker* factors offer a framework that is tailor-made to address the issues that can arise. The due process approach does not. In fact, it's telling that none of the cases cited by the majority have actually found a due process violation on such facts. See *United States v. Lovasco*, 431 U.S. 783, 796 (1977) ("We therefore hold that to prosecute a defendant following investigative delay does not deprive him of due process, *even if his defense might have been somewhat prejudiced by the lapse of time*.") (emphasis added); *United States v. Zukowski*, 851 F.2d 174, 178 (7th Cir. 1988) (suggesting that due process is more appropriate challenge but finding no due process violation because pre-indictment delay did not prejudice defendant); *United States v. Samples*, 713 F.2d 298, 302 (7th Cir. 1983) (no due process violation where defendant challenged twenty-month delay between dismissal of first indictment and re-indictment). The majority emphasizes *Pharm v. Hatcher*, 984 F.2d 783 (7th Cir. 1993), as support for this potential solution, but *Pharm* stated flatly: "The Due Process Clause … plays only a limited role in protecting against oppressive prosecutorial delay. In fact, we have never found pre-accusation delay rising to the level of a constitutional violation." *Id.* at 786 (citation omitted). On closer inspection, the due process cases do not offer much of a solution to these concerns.[5]

---

[5] The strongest support for the majority's approach seems to come from *United States v. Zukowski*, 851 F.2d 174 (7th Cir. 1988), where the defendant was in federal prison on tax charges. He escaped but was arrested a few weeks later and transferred back to federal prison. He was indicted about twenty months later on an escape charge. Zukowski argued that his Sixth Amendment speedy trial right was violated by the

The better solution is to recognize that a federal com-
plaint and arrest warrant filed under Federal Rules of Crim-
inal Procedure 3 and 4 add up to an "official accusation" of a
crime that starts the Sixth Amendment speedy trial clock, at
least where the suspect is in state custody and subject to a
federal detainer. Richardson has not established a violation
of his speedy trial right, but we should not foreclose the pos-
sibility that another defendant could.

---

delay between his arrest after the escape and his indictment for the es-
cape. We rejected that argument, holding that Zukowski's Sixth
Amendment right to a speedy trial "did not attach until he was indicted
for the escape charge." *Id.* at 178.

   *Zukowski* is factually distinguishable. There, neither a criminal com-
plaint nor an arrest warrant had been filed in connection with the escape.
*Id.* at 176. In fact, the only document that had been issued was a "Notice
of Escaped Prisoner," which had "no legal effect." *Id.* at 177. We noted
that this document was "informational only" and did not "purport to
order or authorize an arrest of the subject." *Id*. Unlike here, there had
been no official accusation. And if we were to ignore this important fac-
tual difference, it would be difficult to reconcile *Zukowski* with the Su-
preme Court's reasoning in *Smith*, 393 U.S. at 378–80, and the "official
accusation" language in *MacDonald*, *Marion*, and *Doggett*.