NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

File Name: 19a0434n.06

Case No. 19-3005

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Aug 20, 2019
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| JAMES RICE, | ) | |
| Petitioner - Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| | ) | THE SOUTHERN DISTRICT OF |
| WARDEN, WARREN CORRECTIONAL | ) | OHIO |
| INSTITUTION, | ) | |
| Respondent - Appellee. | ) | |
| | ) | |

**BEFORE: ROGERS, BUSH, and LARSEN, Circuit Judges.**

**JOHN K. BUSH, Circuit Judge.** Law enforcement in Hamilton County, Ohio, waited nineteen months between filing a felony complaint against James Rice and indicting him. Rice now brings this habeas petition, asserting that the nineteen-month delay violated his Sixth Amendment right to a speedy trial. For the reasons below, we **AFFIRM** the district court's denial of the petition.

**I.**

The facts in this case are not in dispute. On October 31, 2012, Rice began a two-year sentence at the London Correctional Institution following a Butler County conviction for possessing a weapon under a disability and for possession of drugs. On January 30, 2013, an officer with the Hamilton County Sheriff's Office swore out a complaint and warrant against Rice on suspicion of burglary. A little over a year and a half later, on July 30, 2014, the Ohio

1

Department of Rehabilitation and Corrections ("ODRC") notified the Hamilton County Sheriff's Office that Rice would be released on August 19, 2014. On the day of Rice's release, August 19, an officer with the Hamilton County Sheriff's Office traveled to London Correctional Institution and arrested him on the burglary charges.

Nine days later, on August 28, 2014 (roughly nineteen months after the Hamilton County officer swore a complaint against Rice and a warrant was issued for his arrest), Rice was indicted for aggravated robbery and aggravated burglary. On December 1, 2014, Rice moved to have the indictment dismissed for violation of his Sixth Amendment right to a speedy trial, but the trial court denied that motion and Rice was convicted at trial. The Ohio Court of Appeals affirmed Rice's conviction, and the Ohio Supreme Court declined to hear the matter. Rice then filed the instant habeas petition, which the district court denied, although it nonetheless issued a certificate of appealability.

## II.

"In an appeal from the denial of habeas relief, we review the district court's legal conclusions de novo and its factual findings for clear error." *Scott v. Houk*, 760 F.3d 497, 503 (6th Cir. 2014) (citation omitted). Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), we can overturn a state conviction for an issue adjudicated on the merits only if the relevant state-court decision was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d).

As is relevant here, under the "unreasonable application" prong of this section, a "federal habeas court may not issue the writ simply because that court concludes in its independent

judgment that the state-court decision applied [a Supreme Court case] incorrectly." *Price v. Vincent*, 538 U.S. 634, 641 (2003) (alteration in original) (citation omitted). Rather, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous[; it] must have been 'objectively unreasonable.'" *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003); *Williams v. Taylor*, 529 U.S. 362, 409 (2000)). "An incorrect or erroneous application of clearly established federal law is not the same as an unreasonable one; 'relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no "fairminded disagreement" on the question.'" *Unger v. Bergh*, 742 F. App'x 55, 60 (6th Cir. 2018) (quoting *White v. Woodall*, 572 U.S. 415, 427 (2014)). "This is a difficult to meet . . . and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (internal quotation marks and citations omitted). And it is a standard for which "[t]he petitioner carries the burden of proof." *Ibid.* (citation omitted). The parties agree that the Ohio appellate court adjudicated the issues in this appeal on the merits, so we therefore apply AEDPA deference.

## III.

The Sixth Amendment guarantees in relevant part that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI. The Fourteenth Amendment incorporates the right to a speedy trial against the states. *Klopfer v. North Carolina*, 386 U.S. 213, 223 (1967). "The purpose of the speedy-trial guarantee is to protect the accused against oppressive pre-trial incarceration, the anxiety and concern due to unresolved criminal

charges, and the risk that evidence will be lost or memories diminished." *Brown v. Romanowski*, 845 F.3d 703, 712 (6th Cir. 2017) (collecting cases).

In *Barker v. Wingo*, the Supreme Court established a four-factor test for determining whether one's constitutional right to a speedy trial has been violated: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) prejudice to the defendant. 407 U.S. 514, 530 (1972). "[N]one of the four factors [is] either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant." *Id.* at 533. And even if all four *Barker* factors are satisfied, a court is not required to conclude that a defendant's speedy trial right has been violated. *Id.*

## A.     The Length of the Delay

The first *Barker* factor—the length of the pre-trial delay—functions both as a triggering mechanism and as a measure of the severity of the prejudice suffered by an accused. First, the delay must be lengthy enough to trigger a constitutional analysis at all, "since, by definition, [a defendant] cannot complain that the government has denied him a 'speedy' trial if it has, in fact, prosecuted his case with customary promptness." *Doggett v. United States*, 505 U.S. 647, 651–52 (1992) (citing *Barker*, 407 U.S. at 530–31). Delays of over a year "generally" satisfy the lengthiness requirement, thereby triggering the full *Barker* analysis. *Id.* at 652 n.1. Once this threshold has been crossed, the length of the delay takes on an additional relevancy because "the presumption that pretrial delay has prejudiced the accused intensifies over time." *Id.* at 652.

The Ohio appellate court held that "Rice's speedy-trial rights attached on January 30, 2013, when the felony complaint affidavit, and arrest warrant were filed against him." *State v. Rice*, 57 N.E.3d 84, 89 (Ohio Ct. App. 2015) (citing *State v. Adams*, 45 N.E.3d 127, 148 (Ohio 2015)).

4

Counting from January 30, 2013, to August 28, 2014, the date on which Rice was indicted, results in a delay of 575 days, or just under nineteen months.[1]  The state court observed that the period between the complaint and indictment was sufficient, standing alone, to deserve further speedy-trial analysis under *Barker*.  *Rice*, 57 N.E.3d at 90.  Neither party challenges this conclusion, and we therefore accept it for purposes of this appeal.[2]

---

[1] Presumably rounding down, the Ohio appellate court determined that the delay was "18 months."  *Rice*, 57 N.E.3d at 90.  We will continue to refer to a nineteen-month delay, as that more accurately reflects the period as calculated by the Ohio Appellate court.

[2] We need not address whether the Ohio appellate court's understanding of which events trigger the attachment and detachment of the Sixth Amendment right to a speedy trial constitutes an unreasonable application of Supreme Court precedent.  *Doggett* held that one's speedy-trial rights are "triggered by arrest, indictment, *or other official accusation*." 505 U.S. at 655 (emphasis added).  The Ohio appellate court, citing Ohio state law, considered the felony complaint affidavit and arrest warrant issued against Rice to be official accusations under *Doggett*.  Although the Sixth Circuit has not considered whether an Ohio felony complaint affidavit and arrest warrant constitute an official accusation, other courts to have considered similar issues have not interpreted *Doggett* so broadly.  *See, e.g.*, *United States v. Richardson*, 780 F.3d 812, 814–16 (7th Cir. 2015) (holding that filing a federal complaint, affidavit of probable cause, and detainer does not trigger the speedy-trial right); *United States v. Pierce*, 74 F. Supp. 2d 661, 663 n.2 (S.D.W.V. 1999) (noting that a defendant would have a "significant uphill battle" showing that the issuance of a federal criminal complaint and arrest warrant triggered the speedy-trial right); *People v. Martinez*, 996 P.2d 32, 42 (Cal. 2000) (holding that the "defendant's speedy trial right under the federal Constitution's Sixth Amendment did not attach upon the filing of the felony complaint or the issuance of the arrest warrant."); *see also United States v. Brown*, 498 F.3d 523, 527 (6th Cir. 2007) ("[T]he Sixth Amendment's speedy-trial guarantee, which explicitly refers to 'the accused,' does not apply until an individual is arrested or indicted." (quoting *United States v. Marion*, 404 U.S. 307, 312, 321 (1971))).  To the degree that the Ohio appellate court's analysis reflected a concern for the rights of individuals who have not yet been subject to formal arrest or indictment (or the Ohio cognates thereof), we note that although the "Sixth Amendment's Speedy Trial Clause . . . does not attach until . . . a defendant is arrested or formally accused," statutes of limitation protect against the prosecution of stale charges and the "Due Process Clause" acts "as a safeguard against fundamentally unfair prosecutorial conduct" that causes pre-arrest and pre-indictment delay. *Betterman v. Montana*, 136 S. Ct. 1609, 1613 (2016) (citing *United States v. Lovasco*, 431 U.S. 783, 789 (1977), and *Marion*, 404 U.S. at 312, 320–21).  Rice's constitutional right to a speedy trial, then, may not have attached until he was arrested on August 19, 2014.

As for when to measure speedy trial rights at the other end, we do not suggest that speedy-trial rights terminate at indictment.  That would be clearly inconsistent with *Doggett*'s clear statement that these rights attach in the first place at the time of "arrest, indictment, or other official accusation."  505 U.S. at 655.  Like the Ohio state court, we emphasize here the period between the complaint and indictment only because that is how Rice himself framed his claim—he argues only that this specific period was unconstitutionally drawn-out.  *See Rice*, 57 N.E.3d at 88 ("Rice first argues that the state violated his speedy-trial rights under the Sixth Amendment . . . by failing to timely indict him for the aggravated-burglary and aggravated-robbery offenses.").  And since the state does not argue that any portion of that timeframe should be excluded for purposes of analyzing Rice's speedy-trial claim, we accept it for our purposes.

### B.     The Reason for the Delay

The second *Barker* factor is "the reason the government assigns to justify the delay." *Barker*, 407 U.S. at 531.  "A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government," while a "more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." *Ibid.*  And finally, "a valid reason, such as a missing witness, should serve to justify appropriate delay." *Ibid.*

The Ohio appellate court found that the delay was caused by the fact that the officer handling Rice's case would generally wait "for the ODRC to contact his department when [a] defendant was ready to be transported or released" and so "made no attempt to serve Rice with the criminal complaint" until Rice was released.  *Rice*, 57 N.E.3d at 90.  Because the government bore responsibility for the delay, but the delay was not part of a deliberate attempt to hamper Rice's defense, the Ohio Appellate Court held that "the second factor weighs slightly against the state and in favor of Rice." *Ibid.*

Neither party complains that this conclusion is in error, and we therefore accept it for purposes of this appeal.

### C.     Rice's Assertion of his Right

The third *Barker* factor, the defendant's assertion of his right to a speedy trial, "is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right." *Barker*, 407 U.S. at 531–32.  "Although a defendant does not waive the right to a speedy trial by failing to assert it, the degree to which the defendant has asserted the right is one of the factors to be considered in the balance." *United States v. Brown*, 169 F.3d 344, 350 (6th Cir. 1999) (citing

*Barker*, 407 U.S. at 531–32). This factor is a measure of how quickly the defendant asserted his right to a speedy trial "in the context of the overall delay." *United States v. Watford*, 468 F.3d 891, 907 (6th Cir. 2006). And a defendant is not penalized for failing to assert his speedy-trial right before he becomes aware that he has been charged. *See Brown*, 169 F.3d at 350.

Rice asserted his right to a speedy trial on December 1, 2014. *Rice*, 57 N.E.3d at 90. This was about three-and-a-half months after Rice was arrested for the Hamilton County charges on August 19, 2014.[3] The Ohio appellate court found that Rice bore responsibility for this additional three-and-a-half-month delay and that the third *Barker* factor "weighs slightly in the state's favor." *Rice*, 57 N.E.3d at 90.

Rice argues that the Ohio appellate court was unreasonable for not considering that he "filed a lengthy and complex motion to assert his right to a speedy trial" when it determined whether he was responsible for the just-over-three-month delay, as well as for failing to measure the delay against the government's longer delay. In the context of AEDPA, neither argument is convincing.

As the district court noted, although Rice's "motion to dismiss had fifty-one pages of exhibits, most were public records and none were the result of independent investigation" by his counsel. *Rice v. Harris*, Case No. 1:17-cv-293, 2018 WL 4853502, at *1 (S.D. Ohio Oct. 5, 2018). The Ohio appellate court was therefore not unreasonable in finding that Rice bore some responsibility for not asserting his speedy-trial right more promptly. And Sixth Circuit precedent shows that the Ohio appellate court was not unreasonable in finding this factor weighed slightly in the state's favor. In *United States v. Schreane*, we held that a four-month-and-three-week delay in invoking the speedy-trial right, when weighed against a total delay of twenty-nine months,

---

[3] Now rounding up, the Ohio appellate court referred to this as a four-month delay. *Rice*, 57 N.E.3d at 90.

7

weighed against the defendant. 331 F.3d 548, 557 (6th Cir. 2003). The defendant's delay in *Schreane* constituted approximately one-sixth of the total delay, and Rice's three-and-a-half-month delay in asserting his rights is only a marginally lower proportion of the total delay in this matter. Given the deference due to the Ohio appellate court under AEDPA, we will not unsettle that court's conclusion that the third *Barker* factor weights slightly against Rice.

### D. Prejudice to Rice

The last *Barker* factor is concerned with the prejudice suffered by the defendant. "A defendant must show that 'substantial prejudice' has resulted from the delay." *Schreane*, 331 F.3d at 557 (quoting *United States v. White*, 985 F.2d 271, 276 (6th Cir. 1993)). "[P]rejudice[] should be assessed 'in the light of' three interests: (1) to prevent oppressive pretrial incarceration, (2) to minimize anxiety and concern due to unresolved criminal charges, and (3) to minimize damage to the defense." *Sutton*, 862 F.3d at 561–62 (quoting *Barker*, 407 U.S. at 532).

Rice does not argue that the delay caused any anxiety or concern due to the unresolved Hamilton-County charges; after all, he asserts he did not even know about those charges until he was arrested. Rice instead argues that he was prejudiced by the delay because it increased his potential period of incarceration by denying him the possibility of serving his sentence for the Hamilton-County crime concurrently with his sentence for the Butler-County crime, and because evidence available to Rice degraded or was lost during the delay.[4]

In *Smith v. Hooey*, the Supreme Court held that a prisoner may be prejudiced by a pre-trial delay because "the possibility that the defendant already in prison might receive a sentence at least

---

[4] Rice also cites *Doggett* for the proposition that delays approaching a year are "presumptively prejudicial." As *Doggett* makes clear, however, "'presumptive prejudice' does not necessarily indicate a statistical probability of prejudice; it simply marks the point at which courts deem the delay unreasonable enough to trigger the *Barker* enquiry." 505 U.S. at 652 n.1. This is just to say that, as already noted, the delay suffered by Rice satisfied the threshold inquiry mandated by the first *Barker* factor.

partially concurrent with the one he is serving may be forever lost if trial of the pending charge is postponed." 393 U.S. 374, 378 (1969). The Ohio appellate court found that Rice's having lost the possibility of concurrent sentences did prejudice him but cited Sixth Circuit precedent in holding that "the theoretical and speculative loss" of concurrent sentences was insufficient to satisfy the fourth *Barker* factor. *Rice*, 57 N.E.3d at 92 (citing *White*, 985 F.2d at 276). That is exactly what *White* held, and it was not unreasonable for the Ohio appellate court to apply *White* when interpreting *Hooey* and *Barker*. *See White*, 985 F.2d at 276 (That the defendant "was prevented from having . . . two sentences run concurrently . . . is not sufficient to constitute 'substantial prejudice'" under the fourth *Barker* factor." (internal citation removed)).

Rice also argues that the delay damaged his defense because evidence available to Rice degraded or was lost during the delay. The district court refused to address this issue, holding that Rice "forfeited this argument by failing to raise it in his pleadings." *Rice v. Harris*, Case No. 1:17-cv-293, 2018 WL 6510558, at *2 (S.D. Ohio Dec. 11, 2018). Rice challenges this holding, arguing that he raised the argument in his traverse before the district court. But "'[r]aising [an] issue for the first time in a reply brief [in the district court] does not suffice' to preserve the argument for appeal." *Barany-Snyder v. Weiner*, 539 F.3d 327, 331–32 (6th Cir. 2008) (alterations in original) (quoting *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008)). Rice accordingly forfeited this argument by failing to raise it in his petition.[5] *See Tyler v. Mitchell*,

---

[5] The state's argument before us regarding the claim of lost or degraded evidence is solely that Rice failed to raise that prejudice argument in either state court or in his federal court pleadings. Rice's main brief before us points out (correctly) that Rice argued such prejudice from delay in his state appellate brief (though not in his original motion to dismiss) and in his federal court traverse (though not in his original habeas petition). The state replies to these points only as follows: "the District Court correctly determined that any claim of prejudice from the loss of evidence is forfeited by Rice's failing to raise it in the state courts and alternatively, if Rice did raise this claim in the state courts, he failed to raise it in his District Court pleadings and it is forfeited on that basis." State Br. at 26 (cleaned up). An appellee may of course decline to provide a response to an argument presented by an appellant, though that may not be wise, or helpful to the court. It is not acceptable, however, for state counsel to mischaracterize the record by indicating that Rice failed altogether to raise the prejudice issue in the state courts, when Rice's brief contains record citations showing that Rice did not altogether fail to raise the prejudice issue in state court. The state's

9

416 F.3d 500, 504 (6th Cir. 2005) ("Because the . . . argument was first presented in [petitioner's] traverse rather than in his habeas petition, it was not properly before the district court, and the district court did not err in declining to address it." (citations omitted)).

\* \* \*

Given the deference owed to state courts under AEDPA, we cannot conclude that the Ohio appellate court unreasonably applied Supreme Court precedent in evaluating the *Barker* factors. And because Rice has not cited any Supreme Court precedent recognizing a Sixth Amendment speedy-trial violation on facts remotely similar to those in this case, we cannot conclude that the Ohio appellate court unreasonably applied Supreme Court precedent in weighing those factors. We therefore **AFFIRM**.

---

mischaracterization does not change the outcome here, because Rice's forfeiture ultimately turns on his lateness in raising the argument in federal court.